[No. 13151. Department Two. August 29, 1916.]

STATE BOARD OF MEDICAL EXAMINERS, *Respondent*, v.
M. C. MACY, *Appellant*.[1]

PHYSICIANS AND SURGEONS—LICENSE—REVOCATION — COMPLAINT—
OBJECTIONS—SUFFICIENCY. Where a complaint before the state medical board for the revocation of license to practice, substantially in the language of the statute, was not objected to, and on trial *de novo*, a stipulation for the admission of certain advertisements answered all the purposes of a bill of particulars, objection cannot be made to the sufficiency of the complaint, as it will be most liberally construed, and is not subject to the strict rules of pleading incident to actions at law.

SAME—LICENSE—REVOCATION—STATUTE—VALIDITY. Rem. & Bal. Code, § 8397½, subds. 3 and 4, defining unprofessional conduct, for which a license to practice may be revoked by the state medical board, as all advertising of a medical business intended or having a tendency to deceive credulous or ignorant persons and so be harmful to public morals or safety, is not void or unconstitutional for uncertainty in that it furnishes no standard for determining what is unprofessional conduct.

JURY—RIGHT TO JURY TRIAL—PHYSICIANS—REVOCATION OF LICENSE. Upon appeal from the revocation by the state medical board of a license to practice, there is no constitutional right to a jury trial; since under the common law there was no such proceeding, and our constitutional provision that the "right to trial by jury shall remain inviolate" means only that such right shall continue as it existed at the time of the adoption of the constitution.

SAME. Rem. & Bal. Code, § 8399, providing that an appeal from the revocation by the state medical board of a license to practice shall stand for trial in all respects as ordinary civil actions and be tried *de novo*, does not provide for a trial by jury; since a jury trial is not required in all civil actions.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 19, 1915, upon findings in favor of the plaintiff, affirming upon appeal an order of the state medical board in revoking appellant's license to practice medicine as an osteopath. Affirmed.

[1]Reported in 159 Pac. 801.

*Carl J. Smith* (*Milo A. Root*, of counsel), for appellant.

*The Attorney General* and *Howard Waterman, Assistant*
(*C. E. Arney*, of counsel), for respondent.

PARKER, J.—This is an appeal from a judgment of the
superior court for King county affirming the decision of the
state board of medical examiners revoking the license of ap-
pellant, M. C. Macy, as a licensed osteopathic physician
practicing his profession in Seattle.

It is first contended by counsel for appellant that the com-
plaint filed against him, and upon which the action for the
revocation of his license was tried before the state board of
medical examiners and thereafter upon appeal in the su-
perior court, does not state facts constituting cause for the
revocation of his license. There is nothing in the record be-
fore us indicating that the sufficiency of the complaint was in
any manner challenged before the state board of medical ex-
aminers or in the superior court, so we conclude that its
sufficiency is challenged in this court for the first time. This
fact calls for a most liberal construction of its allegations
looking to the sustaining of the judgment, even if the pro-
ceedings should be regarded as purely judicial. *Mosher v.
Bruhn,* 15 Wash. 332, 46 Pac. 397; *Walsh v. Meyer,* 40
Wash. 650, 82 Pac. 938; *Johnson v. Ryan,* 62 Wash. 60, 112
Pac. 1114.

The complaint, after charging that appellant "advertised
his medical business" in certain named newspapers in Seattle
and Tacoma upon certain specified dates, charges:

"That such advertising of his medical business was in-
tended and has a tendency to deceive the public and impose
upon credulous and ignorant persons and so be harmful and
injurious to public morals or safety.

"That such advertisements consist in part in advertising
of medicine or of means whereby the monthly periods of
women can be regulated or the menses re-established if sup-
pressed."

This quoted portion of the complaint follows, in substance, the language of subdivisions 3 and 4 of § 8397½, Rem. & Bal. Code, defining unprofessional conduct for which the licenses of osteopaths and other physicians may be revoked by the state board of medical examiners. The argument is, in substance, that the complaint is defective in that it does not set out or describe with sufficient certainty the advertisements charged as the unprofessional conduct on the part of appellant. It might well be argued that this, in any event, would only entitle appellant to have the complaint against him made more specific and certain, or that he be furnished a bill of particulars before trial, and that, having proceeded to trial before the state board of medical examiners without insisting upon this right, it was waived. However that may be, when the case was pending upon appeal in the superior court, where, in accordance with Rem. & Bal. Code, § 8399, it was tried *de novo*, a stipulation was entered into between counsel upon both sides, before the trial in the superior court, that certain specified advertisements, copies thereof being made a part of the stipulation, which appeared upon their face to have been published by appellant in certain named Seattle and Tacoma newspapers, might be introduced in evidence upon the trial in the superior court, subject only to objections as to their "competency and materiality." The record before us renders it apparent that this stipulation served all the purposes of a bill of particulars, and advised appellant of the specific charge against him as much as any language of the complaint standing alone could possibly have done. It seems quite clear to us that he cannot now complain of the insufficiency of the complaint, and that in no event can the complaint be said to be so defective as to be insufficient to support the judgment. It seems to be well settled by the authorities that proceedings of this nature are not purely judicial in the sense that they must be attended by the strict rules of pleading and procedure incident to actions at law. *Meffert v. State Board of Medical Reg-*

*istration & Examination,* 66 Kan. 710, 72 Pac. 247, 1 L. R.
A. (N. S.) 811; *Munk v. Frink,* 81 Neb. 631, 116 N. W. 525,
17 L. R. A. (N. S.) 439; *State Medical Board of Arkansas
Medical Soc. v. McCrary,* 95 Ark. 511, 130 S. W. 544, 30
L. R. A. (N. S.) 783; *State v. State Board of Medical Ex-
aminers,* 34 Minn. 387, 26 N. W. 123.

Among the seven definitions of acts declared to constitute
unprofessional conduct for which a practitioner's license may
be revoked, found in Rem. & Bal. Code, § 8397½, is the fol-
lowing:

"Third. All advertising of medical business which is in-
tended or has a tendency to deceive the public or impose upon
credulous or ignorant persons, and so be harmful or injurious
to public morals or safety."

This portion of the statute, it is contended in appellant's
behalf, is unconstitutional, in that it is so vague and uncer-
tain as to leave the acts constituting unprofessional conduct,
attempted to be so defined, subject to the mere personal
opinion of the members of the state board of medical exam-
iners, before whom the question of the unprofessional con-
duct is to be tried, and furnishes no standard for the guid-
ance of the board in determining what is unprofessional con-
duct so attempted to be defined by the statute. This con-
tention touches a question with reference to which the courts
are not in entire harmony, but we are constrained to adopt
the view that this definition of unprofessional conduct is not
void or unconstitutional because of its vagueness or uncer-
tainty, in harmony with what we regard as the weight of
authority and better reason, in view of the fact that this is
not a criminal statute enacted with any purpose of imposing
penalties as such.

In *State ex rel. Williams v. Purl,* 228 Mo. 1, 128 S. W.
196, there was involved the revocation of a license of a
dentist by the state board of dental examiners upon the
ground of unprofessional conduct in the publication of ad-
vertisements of his business. The statute invoked by the

prosecution was assailed by defendant's counsel as being unconstitutional in that it merely defined the alleged unprofessional conduct by the words, "fraud, deceit or misrepresentation in the practice of dentistry." The statute was held constitutional and not void for uncertainty. It seems plain to us that the third subdivision of § 8397½, above quoted, is no less certain than these words under consideration by the Missouri court. The words of our statute, "advertising . . . which is intended or has a tendency to deceive the public or impose upon credulous or ignorant persons," surely are no less certain as defining unprofessional conduct.

In *State Medical Board of Arkansas Medical Soc. v. Mc-Crary, supra,* the same conclusion was reached by the court, having under consideration alleged unprofessional conduct of a physician defined by the statute as "publicly advertising special ability to treat and cure chronic and incurable diseases."

In *State v. State Medical Examining Board,* 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575, and *State v. State Board of Medical Examiners, supra,* unprofessional conduct warranting the refusal to issue or to revoke a license, defined by the statute as "unprofessional or dishonorable conduct," was recognized as being constitutional.

In *Berry v. State* (Tex. Civ. App.), 135 S. W. 631, the statutory words "other grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public," following specified unprofessional acts, was held a sufficient statutory specification of conduct warranting revocation of licenses, and not void for uncertainty. In view of the element of deceit in our statutory definition of unprofessional conduct, the following observations of the Texas court in that case are of interest here:

"The terms 'unprofessional' or 'dishonorable' conduct used in the law of 1907 are qualified and modified by the language 'of a character likely to deceive or defraud the public,' to

distinguish them from acts that are unprofessional or dishonorable under the code of ethics prescribed by the honorable profession of medicine that would not, directly at least, react to the disadvantage of the public, such as not advertising, of not entering into a consultation with an attending physician without his consent, and other acts that go to form and constitute the code of the honorable and upright practitioner of medicine. The law leaves the enforcement to the medical profession of its rules of ethics, and, however conducive they may be to creating and preserving the high standard of one of the most important and honored professions in the world, takes no cognizance of them, and does not seek to enforce them, except in so far as their infraction may infringe upon the rights and welfare of the public. But when the unprofessional conduct of the member of the medical profession is of such a character as to deceive or defraud the public, then the law denounces such conduct, and strips the offender of the means which make it possible to impose upon the credulous and unwary. Such unprofessional conduct would necessarily be closely allied to crime, because it is defrauding the public, and yet it was never intended to confine such conduct to the kind or class of offense that is denounced by the Criminal Code of Texas. That is provided for in a different subdivision of the statute from the one under which this case is prosecuted."

In *Richardson v. Simpson,* 88 Kan. 684, 129 Pac. 1128, 43 L. R. A. (N. S.) 911, a statute authorizing the revocation of a dentist's license for specified offenses, the additional phrase "or for any other dishonorable conduct" was held, as to the latter, not unconstitutional for indefiniteness.

In *Aiton v. Board of Medical Examiners,* 13 Ariz. 354, 114 Pac. 962, L. R. A. 1915 A 691, a statutory definition of unprofessional conduct reading, "any grossly immoral or unprofessional conduct rendering him or her unfit to practice medicine," was held sufficiently definite and certain so far as constitutional objections are concerned.

The only decisions of the courts coming to our attention which we regard as lending support to appellant's conten-

tion and in conflict with the holdings of the above noticed decisions are *Matthews v. Murphy*, 23 Ky. Law 750, 63 S. W. 785; *Czarra v. Board of Medical Supervisors*, 25 App. D. C. 443, and *Hewitt v. State Board of Medical Examiners*, 148 Cal. 590, 84 Pac. 39, 113 Am. St. 315, 3 L. R. A. (N. S.) 896. This California case, however, deals with a statutory definition of unprofessional conduct reading, "all advertising of medical business in which grossly improbable statements are made." The element of tendency to deceive or intent to deceive, found in the above quoted definition of our statute, was apparently not present in the California statute, and this it might well be argued distinguishes that case from the one before us.

We conclude that the definition of unprofessional conduct found in the third subdivision of § 8397½, Rem. & Bal. Code, above quoted, is not void or unconstitutional for vagueness or uncertainty. The same contention is made by counsel for appellant against the constitutionality of the fourth subdivision of § 8397½, upon which the judgment of the state board of medical examiners and the superior court seems to have been also rested. We think there is much less ground for the contention of counsel for appellant to rest upon with regard to the fourth subdivision than with respect to the one we have above discussed, and that what we have already said disposes of that contention against appellant.

It is contended by counsel for appellant that he was entitled to a jury trial in the superior court, his counsel having made demand therefor prior to the trial therein. This contention rests apparently upon the theory that, since Rem. & Bal. Code, § 8399, provides for a trial *de novo* upon appeal to the superior court, he is entitled to a jury trial therein. That section, among other things, provides:

"The clerk of such court shall thereupon [upon filing of the appeals] docket such appeal causes, and they shall stand for trial in all respects as ordinary civil actions, and like

proceedings be had thereon.   Upon such appeal said cause shall be tried *de novo.*"

So far as appellant's claim of right to jury trial rested upon the constitution is concerned, it seems plain that we are dealing with a proceeding wherein the right of trial by jury did not exist prior to the adoption of our state constitution.   Indeed, an examination of our statutes then in existence will show that there was then no such proceeding triable in any court or before any tribunal.   The statute then in existence made no provision for the licensing or revoking of licenses of physicians (Code of 1881, § 2284 *et seq.;* Laws of 1886, page 169; Laws of 1887, page 159), the first act providing for the issuing and revocation of licenses of physicians, being passed after the adoption of our constitution (Laws of 1890, page 114), which act, so far as procedure touching the revocation of licenses is concerned, is in substance the same as prescribed by the law we are now considering.   It is also apparent that there was no such proceeding at common law.   We have held, in harmony with the general rule, that our constitutional provision that "the right to trial by jury shall remain inviolate," means only that such right shall continue as it existed at the time of the adoption of our constitution.   *State ex rel. Mullen v. Doherty,* 16 Wash. 382, 47 Pac. 958, 58 Am. St. 39; *Carey v. Pasco,* 89 Wash. 383, 154 Pac. 433.   It would seem to follow, therefore, that this constitutional guaranty has no reference to proceedings of this nature.

In *State Board of Health v. Roy,* 22 R. I. 538, 48 Atl. 802, there was involved the question of the right to trial by jury in a proceeding involving the revocation of a license of a physician upon substantially the same grounds as are here involved, and under a statute which apparently contemplated a trial *de novo* in court, upon appeal from the decision of the board, of substantially the same nature as is provided by our statute.   Touching the question of jury trial in such cases, having in view their constitutional guar-

anty of jury trial in the exact words of ours, Justice Rogers, speaking for the court, observed:

"In *Mathews v. Tripp*, 12 R. I. 256, 258, Durfee, C. J., says: 'Trial by jury is a well known kind of trial. The right of trial by jury, as secured by the constitution, is in our opinion simply the right to that kind of trial. And the right remains inviolate so long as the jury continues to be constituted substantially as the jury was constituted when the constitution was adopted, and so long as all such cases as were then triable by jury continue to be so triable without any restrictions or conditions which materially hamper or burden the right.'

"A jury trial is not required by the law of the land in all civil cases, and unless it can be shown that previous to the adoption of the constitution of the state cases of the class now under consideration were required to be tried by a jury, the provision of the statute in question would not be invalid because of not providing for such a trial. It is clear that this is not one of the classes of cases in which jury trial is reserved by the constitution, as it belongs to a class which has arisen since the adoption of the constitution."

We are of the opinion that there is no constitutional right of trial by jury in proceedings of this nature.

Was appellant entitled to a trial by jury because of the provision of § 8399, that cases on appeal to the superior court involving the revocation of licenses of osteopaths and other practitioners "shall stand for trial in all respects as ordinary civil actions, and like proceedings be had thereon?" In other words, is this a statutory awarding of a jury trial in such cases? Manifestly not, unless the words "civil actions" used in the statute compel such a conclusion. The decision of the Rhode Island court in the *Roy* case, above noticed, seems to argue against the contention that such statutory provision has the effect of awarding a jury trial. The exact terms of the statute involved in that case do not appear in the opinion of the court, but it does appear from remarks of the court therein that if the decision of the board is against the defendant upon the question of the

revocation of his license and he appeals to the court, his case is there "tried in full." The court apparently reached the conclusion that the defendant was not entitled to a jury trial upon the theory that, while the proceeding was in the nature of a civil action, it was not, for that reason alone, triable by jury, the court observing that "jury trial is not required by the law of the land in all civil cases." This observation of the Rhode Island court seems peculiarly applicable here, in view of the fact that the words "civil action" have been the name common to all actions "for the enforcement or protection of private rights or the redress of private wrongs," by the express terms of our statute, since long before the adoption of our constitution. Rem. & Bal. Code, § 153. The name has no more application to actions triable by a jury than. to those not so triable.

Counsel for appellant call our attention to, and rely principally upon, the decision of the supreme court of Indiana in *Reilly v. Cavanaugh*, 32 Ind. 214, holding that an attorney in a disbarment proceeding against him was entitled to a jury trial under a statutory provision reading "if he [the accused attorney] appear, pleadings may be filed and trial had as in other cases." This does seem to lend support to counsel's contention, in the light of the similar provision of our statute; but that was a proceeding involving something more than the question of the disbarment of an attorney. It was apparently an action against the attorney by his client to recover money which he neglected to turn over to his client, the prayer being "for a judgment for the same with ten per cent damages, and that he be suspended from the practice in the courts of this state." While the opinion does not show the exact language of the statute other than that above quoted, it is apparent that the statute authorized an action against the attorney to recover the money and, incidentally, involving his suspension from practice. This, we think, furnishes some reason for construing the statute, as that court did, as awarding defendant attor-

ney a jury trial. If this does not differentiate that case from the one before us, with all due deference to that learned court, we would feel constrained to entertain a different view from that reached by it, in view of the theory of disbarment proceedings adopted by us, which are of the same nature as that here involved, that they are not criminal proceedings nor are they purely civil actions in a common law sense, but are special proceedings. *State ex rel. Mackintosh v. Rossman,* 53 Wash. 1, 101 Pac. 357, 21 L. R. A. (N. S.) 821; *State ex rel. Murphy v. Snook,* 78 Wash. 671, 139 Pac. 764.

Counsel for appellant also cite and place some reliance upon decisions of the supreme court of Louisiana in *Chevalon v. Schmidt,* 11 Rob. (La.) 91, and *Turner v. Walsh,* 12 Rob. (La.) 383. These decisions, however, hold the defendant entitled to a jury trial in proceedings seeking his disbarment, because of the peculiar language of the statute there involved and upon the theory that it was there, in effect, a criminal proceeding. In view of the nature of the proceeding in this state, we conclude that the statute does not mean that appellant is entitled to trial by jury in the superior court.

We find no error prejudicial to appellant—the evidence is not before us presenting the merits of the case, so we conclude that the judgment of the superior court affirming the decision of the state board of medical examiners must be affirmed. It is so ordered.

MORRIS, C. J., CHADWICK, and BAUSMAN, JJ., concur.