[No. 36903. Department Two. December 26, 1963.]

*In the Matter of the Application for a Writ of Habeas Corpus of* EUGENE RITCHIE, *Appellant,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.*

*In the Matter of the Application for a Writ of Habeas Corpus of* LEROY GLENN GARDNER, *Appellant,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.**

*Reported in 387 P. (2d) 967.

[2]*Aylward v. Lally,* 147 Wash. 29, 264 Pac. 983.

*Richard E. Kane* and *Kadish & Kane,* for appellants.

*The Attorney General, Ralph E. Olson* and *Stephen C. Way, Assistants,* for respondent.

DONWORTH, J. — Petitioners Eugene Ritchie and Leroy Glenn Gardner are appealing from the trial court's denial of their respective petitions for writs of habeas corpus. The Superior Court for Walla Walla County heard and considered these matters together on August 27, 1962. The court entered findings and conclusions in each case, together with an order denying the two applications for writs of habeas corpus.

The sole issue of this appeal is whether the petitioners were adequately advised of their right to counsel at their arraignment.

April 15, 1960 (when appellant Ritchie was 18 years of age, and appellant Gardner was 19), they were each arraigned in the Superior Court for Grant County on an information charging them (and a third defendant) jointly with the crime of robbery of a service station attendant by putting him in fear of injury to his person.

The information was read to appellants in open court by a deputy prosecuting attorney.

The following proceedings then took place in connection with the arraignment of appellant Gardner:

"The Court: Mr. Ritchie may be seated. And your true and correct name is LeRoy Glenn Gardner? Gardner: Yes, sir. The Court: What is your age? Gardner: Nineteen. The

Court: Where do you live? Gardner: Spokane, Washington. The Court: Are you married? Gardner: No, sir. The Court: Are you living at home with your parents? Gardner: Yes. The Court: It is the duty of the court to inform you of your constitutional rights at the time you are arraigned. You have 24 hours within which to enter a plea. Should you enter a plea of Not Guilty, you also have a right to a trial by jury, should you request a jury or not waive a jury. I note you are appearing without an attorney. You have the right to appear with an attorney concerning this charge. Should you prove to the satisfaction of the court you are without funds and should you wish an attorney, the court will appoint an attorney to represent you and the county will pay the costs thereof. However, you may enter a plea at this time to the charge, but whatever plea you enter should be your free and voluntary plea without any holding out or promises by the Prosecuting Attorney's office or the Sheriff's office. Do you understand the crime you are charged with—Robbery? Gardner: Yes. The Court: Do you wish to enter a plea at this time? Gardner: Yes. The Court: You may plead Guilty or Not Guilty. How do you plead? Gardner: Guilty."

The arraignment of appellant Ritchie then followed. The colloquy between him and the court was in essence the same as in the case of appellant Gardner.

Immediately following the pleas of guilty, the deputy prosecuting attorney addressed the court as follows:

"Mr. Neal: Your honor we would like to check into these men's background a little. It is likely we would recommend an institution. The Court: Have either of you boys been in trouble, before? Ritchie: Yes, sir, I have. The Court: Have you? Gardner: Yes. The Court: Mr. Brooks pleaded Guilty the first day of April and we sentenced him to 20 years in the Washington State Penitentiary and the court is recommending he serve a minimum term of eight years. It is quite a long record. *I want you boys to think about this awhile upstairs.* It depends on what your record has been what the court's recommendation will be to the Parole Board. Nineteen and eighteen—certainly you should not be committing the crime of robbery. Are your records very long? Ritchie: No. Gardner: No, sir. The Court: That is all, you may be seated in the back. Ritchie: Your honor? The Court: Yes. Ritchie: We both have made our statements on this armed robbery plus other things that have

been committed. I would appreciate it if we could get time, now, so that we can get the time finished with and get out on the street. The Court: The court is going to wait until the Prosecuting Attorney's office makes the records and they will check with the FBI as to your prior records. It was necessary these two gentlemen be picked up, where? Mr. Neal: In Alabama. They just got back this week. The Court: You put the State of Washington to quite an expense. The court will wait and find what your prior record is. That is all." (Italics ours.)

It thus appears that appellants were asking the court to immediately impose sentence upon them on their pleas of guilty to the charge of armed robbery, but the court declined to do so until their prior records had been investigated.

April 19, 1960, appellants were again brought before the court for the imposition of sentence. The deputy prosecuting attorney stated to the court in the presence of appellants the nature of the acts committed by appellants in robbing the service station operator (they tied him up about 3 a.m.) and recommended a sentence of 20 years' imprisonment in the state penitentiary.

After questioning appellants at some length about the robbery and their prior records, the following took place:

"The Court: At this time the court will enter Judgment and Sentence. As the defendant, LeRoy Glenn Gardner has pleaded Guilty to the crime of Robbery, therefore it is hereby ordered, adjudged and decreed that said defendant is guilty of the crime of robbery as charged in the Information herein, and that he shall be punished by confinement in the Washington State Reformatory for a term of not more than 20 years. The said Defendant is now hereby committed to the custody of the sheriff of aforesaid county to be detained and by him delivered into the custody of the proper officers for transportation to, and confinement in, said institution. Signed this 19th day of April 1960, in the presence of said Defendant. Signed B. J. McLean, Judge. And I wish the record to show, when you do type up the court's recommendation, that you place the minimum term. That is all, you may be seated."

It is to be noted that the court sentenced Gardner to the state reformatory instead of the state penitentiary, which

latter place of incarceration was recommended by the prosecutor. Apparently, appellants were later transferred to the state penitentiary.

The same sentence was imposed upon appellant Ritchie.

It thus appears that appellants had 4 days' time after they pleaded guilty to the charge of robbery in which they could have decided whether they wanted to ask the court for counsel or to change their pleas to not guilty. The court declined their request made at the time of their arraignment for an immediate imposition of sentence. When they did appear for sentence 4 days later, they made no complaint of any kind to the court. At the end of a colloquy between the trial judge and the accused, and just before the impostiion of sentence, the judge asked each appellant if he had anything further to say. Each appellant replied in the negative. It was not until 2 years and 4 months later, when they petitioned the Superior Court at Walla Walla for writs of habeas corpus, that they first asserted an infringement of their constitutional rights.

At the hearing on the petition for the writ of habeas corpus, it was shown that appellant Ritchie had been convicted of the crime of burglary in the second degree in the Superior Court for Spokane County in December, 1959. At that trial, Ritchie was furnished with a court-appointed counsel.

Appellant Gardner is stated, in the state's brief, to have a Weschler-Bellevue I. Q. of 109. At the arraignment prior to entering his plea of guilty, appellant Gardner stated that he understood the nature of the crime with which he was charged, and that he wanted to enter a plea at that time rather than wait 24 hours. At his sentencing 4 days later, appellant Gardner said he had paid for his other crimes and wanted to be sentenced then on the pending charge.

The record in the present proceeding is devoid of any showing by appellants that they did not know of their right to counsel or failed to understand the information given them by the trial court as to their constitutional rights. Nor

does the record show that appellants gave any indication, or that they offered any evidence, that they were without funds to employ counsel.

Appellants' assignment of error is as follows:

"The trial court erred in denying the Writs of Habeas Corpus for the reason that at the original arraignments, appellants were deprived of their right to be represented by counsel."

Appellants argue that the trial court must ask a defendant specifically whether he desires counsel and whether he is without funds to employ his own counsel. They claim that the trial court, at the time of their arraignment, did not follow the proper procedure, and therefore they have not been properly advised of their right to counsel.

The right of an accused to be represented by counsel in a criminal action is found in Const. Art. 1, § 22 (amendment 10). That right is supplemented by two statutes—RCW 10-.01.110 and RCW 10.40.030.

There are *no* "magic words" which fit all situations as to what the trial court must say in advising an accused person of his constitutional rights. In *In re Wilken v. Squier*, 50 Wn. (2d) 58, 61, 309 P. (2d) 746 (1957), we said:

" . . . In furtherance of this constitutional guarantee, RCW 10.01.110 and 10.40.030 imposes upon the court three duties: (1) to inform the defendant that it is his right to have counsel before being arraigned; (2) to ascertain whether because of the defendant's poverty he is unable to employ counsel, in which event, the court must inform the defendant that the court shall appoint counsel for the defendant at public expense if he so desires; (3) to ask whether the defendant desires the aid of counsel.

" . . .

"The plain mandate of our statute imposes a duty on the court to inform a defendant of his constitutional right to have the aid of counsel. Without this information or prior knowledge of his right, a defendant cannot waive his right 'intelligently and competently.' Merely asking the defendant whether he wants a lawyer does not convey the information that he is entitled to a lawyer at public expense if he is an indigent person, nor does it impress upon him the

importance of having legal representation if his rights are to be fully protected. . . ."

In *In re Klapproth v. Squier,* 50 Wn. (2d) 675, 314 P. (2d) 430 (1957), in considering whether a 17-year-old defendant waived his right to counsel, we said, at page 677:

"The statute imposes no duty upon the court 'to press counsel' upon a minor defendant. It does not prescribe the use of a particular form of words, and petitioner does not contend that he did not know he had a *right* to counsel.

"Petitioner waived his right to counsel by refusing the appointment of counsel, and his plea of guilty, after adequate deliberation, was competently and intelligently entered. He has had due process of law. His plea will not be set aside."

In that case, the trial court only asked the defendant if he wished the court to appoint a counsel, and did not specifically advise the petitioner that the county would provide a counsel if he were without funds. This case was decided after *Wilken,* and did not discuss the test outlined.

■ It is now well established that a waiver of the right to counsel must be found on the facts of each case. The often cited case on waiver is *Johnson v. Zerbst,* 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1937), where the United States Supreme Court said, at page 464:

". . . A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, *including the background, experience, and conduct of the accused.*" (Italics ours.)

The rule of the *Johnson* case was adopted by this court in *In re Gensburg v. Smith,* 35 Wn. (2d) 849, 215 P. (2d) 880 (1950), where we said, at page 856:

"An accused person may waive his constitutional right to counsel, but this power of waiver, to be effective, must be exercised 'competently and intelligently.' *Johnson v. Zerbst,* 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357; *Voigt v. Webb,* 47 F. Supp. 743. In the *Johnson* case it was further held that one who asserts that the right

to counsel was not competently and intelligently waived, has the burden of proof to establish that claim."

Appellants cite several cases in support of their contention that they had not been adequately advised of their constitutional right to counsel, and, therefore, there could be no waiver.

*State v. Dechmann,* 51 Wn. (2d) 256, 317 P. (2d) 527 (1957), cited by appellants, is clearly distinguishable from the present case. There, the defendant was asked by the trial court only whether he wanted an attorney. He was not advised that he had such right. The case cites *Wilken, supra,* for the proposition that the mere fact a defendant is asked if he desired counsel does not convey the information that he is entitled to an attorney at public expense if he is without funds. In the present case, the petitioners were advised of their right to employ counsel and also of their right to have counsel appointed by the court and paid from public funds, if they were without funds.

The case of *In re Wakefield v. Rhay,* 57 Wn. (2d) 168, 356 P. (2d) 596 (1960), does not apply to the present case. There, the petitioner was told only that he had a privilege to have an attorney and was asked if he desired an attorney. The petitioner was not given sufficient information from which he could competently and intelligently waive his right to counsel.

*In re Aichele v. Rhay,* 57 Wn. (2d) 178, 356 P. (2d) 326 (1960) (not cited by petitioners), is similar to *Wakefield,* in that the trial court did not inform the defendant of his constitutional rights, but only advised him that he had a right to see an attorney and inquired if defendant desired aid of counsel. This was not sufficient to inform defendant of his right to an attorney at state expense.

This court has, since the present case was argued, decided the case of *State v. Angevine,* 62 Wn. (2d) 980, 385 P. (2d) 329 (1963), which has a direct bearing on the question now before us. In that case, a 17-year-old boy was charged in 1949 with having, in 1947, and again in 1948, taken motor vehicles without the permission of the owners

thereof. In 1962, he petitioned the superior court for a writ of error coram nobis seeking to vacate a sentence of 10 years in the reformatory, entered upon his plea of guilty on the two counts. After holding that the evidence did not preponderate against the trial court's findings that the court, at the time of his arraignment, had advised the youth of his legal rights as a person charged with crime, and that he had knowingly and intelligently waived his right to counsel, this court said, at page 966:

"Petitioner contends, however, that because of his youth at the time of his arraignment he could not, and should not, as a matter of law, be deemed competent to waive counsel, when charged with a felony in superior court.

"There is among the authorities differences of opinion and approach to the question of the competency of a youthful offender to waive counsel. 71 A.L.R. (2d) 1162. Most, if not all, jurisdictions, in felony cases, treat the question presented as one of fact, depending upon the individual offender's education, experience, and intelligence."

Appellants also rely on the fourteenth amendment to the United States Constitution which the United States Supreme Court has recently held makes the provision in the Sixth Amendment relating to an accused person's right to counsel in felony cases applicable to the states. See *Gideon v. Wainwright,* 372 U. S. 335, 9 L. Ed. (2d) 799, 83 S. C. 792 (1963).

Even before the decision in the case last cited, the Supreme Court had held that the due process clause of the Fourteenth Amendment prevented a state from denying counsel to an accused person when the record shows the fundamental unfairness of trying him without the assistance of counsel. See *Carnley v. Cochran,* 369 U. S. 506, 8 L. Ed. (2d) 70, 82 S. Ct. 884 (1962), and cases cited.

Appellants, in invoking the protection of the Fourteenth Amendment, rely on *Rice v. Olson,* 324 U. S. 786, 89 L. Ed. 1367, 65 S. Ct. 989 (1945), where an Indian, without the benefit of counsel, pleaded guilty in a state court to a charge of burglary. The holding in this case is described by the Supreme Court in the *Carnley* case as follows, at p. 515:

"We have held the principles declared in *Johnson v. Zerbst* equally applicable to asserted waivers of the right to counsel in state criminal proceedings. In *Rice v. Olson, supra,* the petitioner had pleaded guilty to a burglary charge. He did not claim that he had requested counsel, but alleged that he had not been advised of his right to the assistance of counsel and that he had not waived that right. In affirming the denial of relief, the State Supreme Court wrote that ' "It is not necessary that there be a formal waiver; and a waiver will ordinarily be implied where accused appears without counsel and fails to request that counsel be assigned to him, particularly where accused voluntarily pleads guilty." ' We held that even when there had been a guilty plea such an implication, treated as a conclusive presumption, was 'inconsistent with our interpretation of the scope of the Fourteenth Amendment,' and that 'A defendant who pleads guilty is entitled to the benefit of counsel, and a request for counsel is not necessary.' 324 U. S., at 788. However, we recognized in *Rice v. Olson* that, although the Fourteenth Amendment would not countenance any presumption of waiver from the appearance of the accused without counsel and the silence of the record as to a request, the entry of the guilty plea might have raised a fact issue as to whether the accused did not intelligently and understandingly waive his constitutional right. We held that a hearing was required since the facts were in dispute. In the present case, however, there was no guilty plea, and the return to the writ does not allege an affirmative waiver. Therefore, there is no disputed fact question requiring a hearing. Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

The *Rice* case differs from the present case for two reasons: first, appellants here, in view of their background and previous experience, were adequately advised of their right to counsel, and, second, they do not claim that they did not understand their rights (appellant in *Rice* alleged he was ignorant of the law).

In the case before us (as shown by the above-quoted portions of the record made in the Grant County Superior Court), both appellants, prior to pleading to the information, were offered counsel, but intelligently and under-

standingly rejected the offer. Hence, the requirements of the sixth and fourteenth amendments to the United States Constitution are satisfied in this case.

In the present case, the trial court followed the format outlined in *Wilken, supra*. Appellants were advised that they had a constitutional right to have counsel. The court also informed them of their right to have court-appointed counsel at the expense of the county if they wished an attorney and were financially unable to employ counsel. The information given them by the trial judge was sufficient to inform them of their constitutional rights when considered in the light of their individual intelligence and experience.

After considering the record in the Grant County arraignment proceedings (quoted above), we have no doubt that appellants knew and appreciated the nature of the proceedings in which they were involved and that they did have a right to counsel. Each of them had had personal experience with criminal procedure. Ritchie also had had a court-appointed counsel to represent him when he was charged with a felony in Spokane in 1959. Appellants make no claim that they did not know or appreciate the nature of the proceedings or that they could intelligently waive their right to counsel. The only claim raised is that the trial court did not specifically ask them questions and elicit answers according to the test in the *Wilken* case.

We feel that the trial court adequately advised *these two* petitioners of their right to be represented by counsel of their own choice or, if indigent, by court-appointed counsel without expense to them, and they were aware of their rights when they chose to enter a plea. They had sufficient information and experience to "competently and intelligently" waive their right to counsel, and they did precisely that. No particular form of words was necessary to convey that information to them.

The trial court's denial of appellants' respective petitions for writs of habeas corpus is affirmed.

OTT, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.