[No. 38007.    En Banc.    November 25, 1966.]

ALVIN H. GEORGE, *Respondent*, v. ROBERT S. DAY, *Petitioner.*\*

*Kenneth E. Serier*, for petitioner.

*Horton & Wilkins*, by *Hugh B. Horton*, for respondent.

OTT, J.—April 8, 1964, a complaint was filed in the police

*Reported in 420 P.2d 677.

court of the city of Kennewick charging Alvin H. George with drunk driving, in violation of § 106, art. 18, ordinance No. 1113 of the city of Kennewick, committed on April 3, 1964.

On the same date, a similar complaint was filed charging him with reckless driving, in violation of the same ordinance and resulting from the same incident.

Alvin H. George demanded a jury trial in the police court. The police judge denied the request. The accused sought a writ of prohibition in the Superior Court for Benton County. The cause was heard upon the following stipulated facts:

COME Now the parties by and through their attorneys of record and respectfully stipulate upon the following facts:

It is stipulated by and between the parties that available documentary evidence, if admitted, would prove, and if witnesses were called, that they would testify to the following facts:

1. That the relator was duly charged in the Police Court of the City of Kennewick before the Honorable Robert S. Day, Police Judge of the City of Kennewick, Benton County, Washington, with having committed certain offenses known as drunk driving and reckless driving, and that complaints setting out said charges were filed in said Court, true copies of which are attached hereto and respectively marked Exhibit "A" and "B" and are each incorporated herein by reference as though fully set forth herein.

2. That the respondent City of Kennewick is a municipal corporation created by the laws of the State of Washington, and is a third class city, organized under the Council-Manager plan.

3. That in the year 1961 the said City adopted by reference certain acts of the Legislature of the State of Washington, relating to motor vehicles, then in effect, particularly RCW 46.56.010 as contained in Section 3, Chapter 393, Washington Session Laws of 1955, except the last paragraph thereof, and RCW 46.56.020, as contained in Section 118, Chapter 189, Washington Session Laws of 1937 and the provisions thereof are a part of Section 106 of Ordinance No. 1113 of said City, as the

same is now and was in effect at the time relator was arrested and so charged in April of 1964.

4. That pursuant to R.C.W. 46.52.100 on the Monday following the conviction or forfeiture of bail of a person charged with the offenses charged against relator, respondent transmits to the Director of Licenses at Olympia an abstract of the record of said Court covering the conviction and/or forfeiture of bail.

5. That if relator is convicted of either of the charges against him in the pending action, the parties understand that it is the policy of the Director of Licenses to immediately suspend, cancel or revoke the driver's license of relator in accordance with law.

6. That the County Commissioners of Benton County, Washington, have not elected to come under the provisions of the Justice Court Act, (Chapter 299, Washington Session Laws of 1961 as amended).

DATED this 4th day of November, 1964.

Exhibit "A" is the complaint charging Alvin H. George with the crime of drunk driving as follows:

[O]n the 3rd day of April, A. D. 1964, in the City of Kennewick, Benton County, Washington, one Alvin H. George did unlawfully violate Section 106 art. 18 of Ordinance No. 1113 of the Ordinances of the City of Kennewick aforesaid relating to Traffic, Travel and their related incidents, which said Ordinance was passed on the 13th day of June, 1961, in that he did then and there Operate a motor vehicle over and along the public streets of the City of Kennewick while under the influence of or affected by the use of intoxicating liquor or narcotic drugs. To wit: drunk driving.

Exhibit "B" is the complaint charging him with the crime of reckless driving as follows:

[O]n the 3rd day of April, A. D., 1964, in the City of Kennewick, Benton County, Washington, one Alvin H. George did unlawfully violate Section 106 art. 18 of Ordinance No. 1113 of the Ordinances of the City of Kennewick aforesaid relating to Traffic, Travel and their related incidents, which said Ordinance was passed on the 13th day of June, 1961, in that he did then and there Operate a motor vehicle over and along the public streets of the City of Kennewick in such a manner as to indicate a will-

ful or wanton disregard for the persons or property of others. To wit: Reckless Driving.

After considering the arguments of counsel, the court granted the writ, ordering

that defendant [Robert S. Day, as Police Judge of the city of Kennewick] shall be and hereby is restrained from any further proceedings in the Police Court of the City of Kennewick in the action entitled "City of Kennewick v. Alvin George," insofar as any action that would affect his driver's license is concerned until such time as he is granted his constitutional right of trial by jury.

The city of Kennewick sought and was granted a writ of certiorari by this court to review the propriety of the writ of prohibition issued by the superior court.

The provisions of chapter 299, Laws of 1961, p. 2425, are not apropos to this review for the reason that the board of county commissioners has not voted to bring Benton County under the act.

The jurisdiction of the police court judge of the city of Kennewick, a city of the third class, is therefore governed by RCW 35.24.460, which, prior to 1965, provided:

The police judge so appointed, in addition to his powers as justice of the peace, shall have exclusive jurisdiction over all offenses defined by any ordinance of the city, and all other actions brought to enforce or recover any license, penalty or forfeiture declared or given by any such ordinance, and full power to forfeit bail bonds and issue execution thereon and full power to forfeit cash bail, and full power and authority to hear and determine all causes, civil or criminal, arising under such ordinance, and pronounce judgment in accordance therewith: *Provided,* That for the violation of a criminal ordinance no greater punishment shall be imposed than a fine of three hundred dollars or imprisonment not to exceed ninety days, or by both such fine and imprisonment. *In the trial of actions brought for the violation of any city ordinance, no jury shall be allowed.* (Italics ours.)

Can the legislature constitutionally create an inferior court having limited criminal jurisdiction, in which court no jury is provided?

Article 4, § 1, of the state constitution, provides:

The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and *such inferior courts as the legislature may provide.* (Italics ours.)

Article 4, § 12, provides:

*The legislature shall prescribe by law the jurisdiction and powers of any of the inferior courts which may be established in pursuance of this Constitution.* (Italics ours.)

Article 1, § 21, provides:

*The right of trial by jury shall remain inviolate,* but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto. (Italics ours.)

Article 1, § 22 (amendment 10), provides in part:

*In criminal prosecutions the accused shall have the right* to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, *to have a speedy public trial by an impartial jury* of the county in which the offense is charged to have been committed and the right to appeal in all cases: . . . . (Italics ours.)

Article 4, § 12, of the state constitution, grants to the legislature authority to determine the jurisdiction and the powers of any inferior court which it elects to create.

In establishing municipal courts for cities of the third class, the legislature, in the exercise of its discretion, has expressly provided that "no jury shall be allowed." Hence, since art. 1, § 21, of the state constitution, provides that "The right of trial by jury shall remain inviolate," it follows that the legislature considered, in enacting RCW 35.24.460, that the penalty which such courts could impose was so minor that no jury was constitutionally required. This policy has been accepted almost unanimously nationwide.

■ We have held that whether a jury is constitutionally

required in a given case depends upon whether the offense can be classified as petty or serious. *State ex rel. O'Brien v. Towne,* 64 Wn.2d 581, 392 P.2d 818 (1964), and cases cited.

The maximum penalty which could be imposed by a municipal court of a city of the third class was "a fine of three hundred dollars or imprisonment not to exceed ninety days, or by both such fine and imprisonment." See RCW 35.24.460 prior to the 1965 amendment.

Under the law of this state, one who is charged with violation of a municipal ordinance is provided with two forums in which his cause can be heard. The first forum is the municipal court. In this court, the accused is afforded a fair and impartial trial before the magistrate only. In the event he is found guilty by the magistrate, the accused person has a right to a trial de novo in the second forum, the superior court of the county in which the municipality is located. In this second forum, the cause is tried anew. The trial in the first forum becomes a nullity. In the second forum, the accused is afforded a jury trial. By this legislatively created judicial system, a person accused of violating a municipal ordinance is, without prejudice to him, afforded two trials in which he may seek vindication of the charge.

If the legislature had provided a jury trial in the first forum, then a person charged with violating a municipal ordinance would be granted two jury trials for the same offense. The constitution requires only that the accused be afforded one jury trial. The legislature, in the exercise of its discretion, has determined that the forum in which a jury trial will be provided for violation of municipal ordinances shall be the superior court of the county in which the municipality is located. If a legislative enactment can be given two interpretations, one rendering it constitutional and the other unconstitutional, we sustain the constitutionality of the act. *Martin v. Aleinikoff,* 63 Wn.2d 842, 389 P.2d 422 (1964). We hold that the legislative enactment granting an accused person a trial before a magistrate only, with a trial de novo on appeal to the superior court where a jury

trial is afforded the accused, is not violative of the constitution of the state of Washington. *Bellingham v. Hite,* 37 Wn.2d 652, 225 P.2d 895 (1950).

■ The municipal court act of this state is not violative of the sixth amendment to the United States Constitution, which provides, *inter alia:* "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed . . . ."

In *Cheff v. Schnackenberg,* 384 U.S. 373, 16 L. Ed. 2d 629, 86 Sup. Ct. 1523 (1966), the Supreme Court of the United States held that an individual charged with a "petty" offense has no constitutional right to a trial by jury.

A "petty" offense is defined in 18 U.S.C. § 1, as follows: *"Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense."* (Italics ours.)

Since the maximum penalty which could have been imposed in the instant case was $300 fine and 90 days in jail, the denial of a jury trial to a person charged with such a petty offense would not be in violation of the sixth amendment to the United States Constitution, as construed by the United States Supreme Court.

■ Finally, the respondent moves this court to dismiss the case because he has not been afforded a speedy trial on the merits as provided by RCW 10.46.010 and as guaranteed by the state and federal constitutions.

RCW 10.46.010 provides:

If a defendant indicted or informed against for an offense, *whose trial has not been postponed upon his own application,* be not brought to trial within sixty days after the indictment is found or the information filed, the court shall order it to be dismissed, unless good cause to the contrary is shown. (Italics ours.)

Respondent moved the court that he be afforded a jury trial. His trial on the merits was "postponed upon his own application." Therefore, his conduct in this regard brings him within the statutory exception.

Both the state and federal constitutions guarantee a de-

fendant a speedy trial on the merits. Constitutional guarantees can be waived. See *In re Ritchie v. Rhay,* 63 Wn.2d 508, 387 P.2d 967 (1963); *Pierce v. Somerset Ry.,* 171 U.S. 641, 43 L. Ed. 316, 19 Sup. Ct. 64 (1898). Where, as here, a defendant by his own action delays the trial of his cause on the merits, he waives his constitutional right to a speedy trial.

For reasons stated, the writ of prohibition entered by the Superior Court for Benton County is quashed, and the cause remanded with instructions to proceed in accordance with the views herein expressed.

DONWORTH, WEAVER, and HALE, JJ., concur.

HILL, J. (concurring in the result)—I concur in the result of the majority opinion. I do not agree with the conclusion of the majority that the violations of the law with which the defendant is charged are petty offenses.

Whether the offenses are serious or petty is not the issue in this case. We are concerned with whether the fact that the legislature has provided there shall be no jury trial in the municipal police court (designed as it is to process a large number of offenders with comparative rapidity) interferes with the defendant's constitutional right to a jury trial. It is my view that a trial in the Kennewick Police Court would not deprive the petitioner of the right to a jury trial. Under the statute, if convicted in that court, he is entitled to appeal to the superior court where he would have the right to a jury trial.

Actually, our present procedure in such cases gives a defendant two opportunities to secure an acquittal, once before a judge of the police court, and once before a superior court jury; and if he succeeds before either, the prosecution is ended.

If petitioner were successful in his contention that he cannot be tried in the first instance except by a jury, the result would be not two jury trials, but a filing direct in the superior court whenever a jury was demanded in the municipal police court.

I am of the same opinion that this court expressed in

*Bellingham v. Hite,* 37 Wn.2d 652, 225 P.2d 895 (1950), *i.e.,* that the constitutional right to a jury trial in criminal cases is secured, although such trial is not authorized in the first instance, provided there is a right of appeal without any unreasonable restrictions to a court in which a jury trial may be had.

RoSELLINI, C. J., and HAMILTON, J., concur with HILL, J.

FINLEY, J. (dissenting)—The problem involved in this appeal of determining whether a defendant charged in municipal or justice court with a particular offense is entitled to a trial by a jury of his peers has been presented and considered on previous occasions by this court. See *State ex rel. O'Brien v. Towne,* 64 Wn.2d 581, 392 P.2d 818 (1964); *Artis v. Rowland,* 64 Wn.2d 576, 392 P.2d 815 (1964); *Bellingham v. Hite,* 37 Wn.2d 652, 225 P.2d 895 (1950), and the cases cited therein.

Trial by jury has become a vital and most significant facet or ingredient of Anglo-American jurisprudence. The archaic and less acceptable modes of trial which prevailed prior to the common law development of trial by jury have been relegated to a fitting role as historical curiosities. Modes of trial commonly used prior to the present-day, full-bloom recognition of trial by jury were: (1) trial by battle —the fighting skill of the champions representing the litigants was the determinant of "justice"; (2) trial by ordeal of water or fire—the accused who was fortunate enough to survive the exposure would be said to have demonstrated his integrity and the propriety of his past conduct; or (3) trial by compurgation—an accused could hope to "prove" the truth of his statements respecting the lawfulness and orderliness of his conduct by having acquaintances from the vicinage solemnly, under compelling oaths, testify that the accused was an honorable, good, and proper man.

As a matter of fact, the modern and seemingly more efficient and expeditious alternative to jury trial—*i.e.,* nonjury proceedings before an experienced and legally trained fact finder and decision maker—might seem to some to be a more favorable setting for defendants in factually complex

cases, or in instances where the defendants are accused of particularly heinous crimes; but this alternative has not become substantially acceptable in our country as a substitute for trial by jury.

Both the Washington State and the United States Constitutions contain provisions guaranteeing a right to a trial by a jury of one's peers. The problem, therefore, in the instant case is to determine whether the basic right to a jury trial extends to a defendant charged in the police court of the city of Kennewick with drunk driving and reckless driving.

The federal constitutional guarantee of trial by jury for criminal defendants is found in art. 3, § 2, and amendment 6. In *State ex rel. O'Brien v. Towne,* 64 Wn.2d 581, 585, 392 P.2d 818 (1964), we stated:

> This court in the *Bellingham* case [*Bellingham v. Hite, supra,*] held that the guarantees of jury trial contained in Art. 3, § 2, and amendment 6 of the federal constitution were limitations solely on the powers of the federal government. This is no longer the case. See *Gideon v. Wainright,* 372 U.S. 335 . . . [1963].

The majority opinion written by Mr. Justice Black in the *Gideon* case is not literally as broad as the interpretation which we attributed to it in the *Towne* case, *supra. Gideon,* construed closely in terms of its ratio decidendi and pertinent precedential value, only incorporates the sixth-amendment "right to council" within the fundamental constitutional principles applicable to the states by virtue of the due process clause of the Fourteenth Amendment. Consequently, it should be our reconsidered judgment that the sixth-amendment guarantee of *trial by jury* has not yet been held by the United States Supreme Court to be a privilege or right of federal citizenship to which all are entitled under the Fourteenth Amendment. *Maxwell v. Dow,* 176 U.S. 581 (1900).

However, it should be noted that Mr. Justice Cardozo's historic reference in *Palko v. Connecticut,* 302 U. S. 319 (1937), to those constitutional safeguards "implicit in the concept of ordered liberty" may well have portended ulti-

mate inclusion of the jury trial provision of the Sixth Amendment within those portions of the Bill of Rights judicially validated, by means of the Fourteenth Amendment, against state enfringement. The validity of Louisiana's constitutional provision denying a trial by jury for all offenses not punishable by hard labor was recently before the United States Supreme Court in *Garrison v. Louisiana*, 379 U.S. 64 (1964); but the Louisiana State Supreme Court's decision was reversed on other grounds, without reaching the jury issue.

In any event, the fact that the federal constitutional provisions regarding jury trial for those accused of criminal offenses may not be binding upon the states does not leave a criminal defendant in our state without any recourse to assert that right. The Washington State Constitution, art. 1, § 21, and the Tenth Amendment (art. 1, § 22) read as follows:

§21 Trial by Jury. The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.

§22 Rights of the Accused. In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed and the right to appeal in all cases: . . . .

We have indicated that the fundamental concept of due process of law is violated, indeed ignored, when criminal defendants are deprived of life or liberty without being afforded the right to a jury trial in which the accused may be heard, may confront and cross-examine witnesses, for the prosecution, and may produce evidence and witnesses in his

defense. *State v. Strasburg,* 60 Wash. 106, 110 Pac. 1020 (1910). Nevertheless, we have also indicated that the state constitutional guarantee of right to trial by jury is neither more nor less, but the same as existed in the territory of Washington at the time the state constitution was adopted. *State Bd. of Medical Examiners v. Macy,* 92 Wash. 614, 159 Pac. 801 (1916); *State v. Strasburg, supra; State ex rel. Mullen v. Doherty,* 16 Wash. 382, 47 Pac. 958 (1897).

But the decisions of this court have often emphasized a countervailing yet eminently sound consideration or approach to problems of interpretation or construction of our state constitution. That approach is essentially attitudinal or a matter of value orientation in interpreting the constitution as a living, dynamic document, not to be equated with suspended animation or petrification of the entire body of the fundamental law of our state. The basic principles and rights enunciated in the state constitution are a skeletal framework of essential guidelines and controlling standards. The skeletal framework provides accommodation for the vital growing points of the law and of our society; yet, paradoxically, it restricts and marks the outer limits of any such accommodation. As a result, the viability and perpetuity of the form of government outlined by the Washington State Constitution can best be guaranteed through appropriate judicial interpretation of the basic framework to meet and cover the dynamics of changing conditions of social and economic life. *State ex rel. Evans v. Brotherhood of Friends,* 41 Wn.2d 133, 247 P.2d 787 (1952); *State ex rel. Linn v. Superior Court,* 20 Wn.2d 138, 146 P.2d 543 (1944); 16 C.J.S. *Constitutional Law* § 14 (1956).

The fact that the driving offenses with which the accused herein is charged did not exist, and were not made punishable by either statute or the common law at the time of the adoption of the Washington State Constitution, does not necessarily negate the existence of a right to trial by jury. This court has found it necessary to utilize the term, "petty offense," as a classification in denominating those instances in which nonjury proceedings are not violative

of a defendant's constitutional rights. See *e.g., State ex rel. O'Brien v. Towne,* 64 Wn.2d 581, 392 P.2d 818 (1964), citing *District of Columbia v. Clawans,* 300 U.S. 617 (1937), and *Callan v. Wilson,* 127 U.S. 540 (1887). Realistically and rationally, the term "petty" is merely descriptive in that it attempts to categorize crimes with respect to the character of the offense and the penalty involved. Like all labels, the term "petty" suffers from hyperclassification and hairline distinctions. Nevertheless, the dangers inherent in the use of such a legalistic label are alleviated if the user clearly keeps in mind the underlying value judgments involved. It seems inescapable, quite logical and rational, that, in ruling whether a person accused with violation of a municipal driving ordinance is entitled to a jury trial as a matter of constitutional right, we are actually determining whether or not rudimentary principles of fair play and elementary concepts of due process and justice require availability of the right to a jury trial in view of the nature of the offense and its possible penalties.

The defendant herein was charged with drunk driving and reckless driving. By the terms of RCW 35.24.460 prior to 1965, the maximum punishment which a police court could impose upon such a municipal ordinance violator is a fine of $300 or imprisonment for not more than 90 days. But, in addition to that court-imposed punishment, pursuant to RCW 46.52.100, it is the practice that, on the Monday following the conviction or forfeiture of bail of a person charged with drunk driving or reckless driving, the police court transmits to the Director of Licenses an abstract of the record of the court relating to the conviction and/or forfeiture of bail.

Furthermore, the stipulated facts in the instant litigation acknowledge that the Director of Licenses is statutorily authorized either to suspend or revoke the driver's license of a person convicted of either drunk or reckless driving. The period of suspension or revocation is related, of course, to the number of convictions involved. I am aware of the rule in several jurisdictions to the effect that the suspension, or revocation, of a defendant's driving license is not

a part of the penalty imposed for the particular offense. These cases regard the suspension, or revocation, of a driver's license as an exercise of the state's police power by way of a withdrawal of the defendant's *privilege* to operate a motor vehicle upon the state highways. See *e.g., State v. Amick,* 173 Neb. 770, 114 N.W.2d 893 (1962); *City of Tucumcari v. Briscoe,* 58 N.M. 721, 275 P.2d 958 (1954); and *Parker v. State Highway Department,* 224 S.C. 263, 78 S.E.2d 382 (1953). I reject the temptation to engage in a legalistic or semantical dialogue as to whether the loss of the driver's license is part of the "punishment" for a conviction of drunken and/or reckless driving. It is a fact of life beyond rationalization through the use of a "nonpunishment" characterization that conviction of drunken and/or reckless driving under § 106 of ordinance 1113 of the city of Kennewick is inextricably related to and is the catalytic factor for the subsequent loss of one's driving privilege under the announced and legally authorized policy of the Director of Licenses.

The fact that the automobile has become an integral and very necessary part of the daily lives of most Americans should require no documentation. We have in a very real sense become a nation on wheels. Thus, little light is shed and very little is gained respecting appropriate resolution of the problem in the instant case by mechanically describing and emphasizing the licensing and use of an automobile as a "privilege." The automobile is today of such great importance to the average citizen that whether or not he is said to have any *"rights"* with respect to its use and enjoyment—the loss of one's driving license is undoubtedly commonly regarded as a very serious consequence, even though it stems from the abuse of one's driving "privilege."

The potential imprisonment or fine to which the defendant, Alvin George, may be exposed or subjected, coupled with the causally related possible suspension of his driver's license, persuades me that charges of drunk driving and/or reckless driving are such serious offenses as to entitle the accused to a trial by jury. Reasoning along this line is

supported by analogous decisions in *State v. Hoben,* 256 Minn. 436, 98 N.W.2d 813 (1959), and *Canon City v. Merris,* 137 Colo. 169, 323 P.2d 614 (1958). It is not surprising that, contrariwise, other jurisdictions have classified similar offenses, with similar consequences, as "petty"—not entitling the accused to a jury trial. See *e.g., Knudsen v. Anchorage,* 358 P.2d 375 (Alaska 1960); *State v. Amick, supra* (Nebraska); and *City of Tucumcari v. Briscoe, supra* (New Mexico). To reiterate: the classification of drunken driving and/or reckless driving as either "serious" or "petty" offenses is merely an end result, expressive of the particular decision maker's value judgment that rudimentary principles of fair play, or elementary concepts of due process and justice, either do or do not entitle the accused to a right to trial by jury. I am convinced, and it is my best judgment, that the offenses with which Mr. George is charged are of such a serious nature that he is entitled to a jury trial.

The consequences of being convicted of either drunk driving or reckless driving are too serious to permit legal procrastination and postponement of the right to a jury trial to the time of, and dependent upon, an appeal to superior court. The denial of a right to trial by jury in prosecutions for violation of municipal ordinances can only be justified on grounds of expediency. But efficient municipal court administration must yield ground where it conflicts with an accused's constitutional rights. To require a person accused of drunk driving and/or reckless driving to undergo the expense and time loss inherent in an appeal in order to secure a jury trial would in many instances simply deny a jury to a defendant who, for good cause, is unable or unwilling to assume the risk and burden concomitant to an appeal. Our holding in *Bellingham v. Hite, supra,* was to the effect that an unfettered right to a jury trial on appeal met all constitutional requirements. This aspect of that case should be overruled. It is my strong conviction that a defendant charged with either drunk driving or reckless driving under a municipal ordinance should be entitled to have all questions of fact relating and material

to the alleged offense determined by a jury of his peers in the traditional manner in the court of primary jurisdiction —in this instance, the police court of the city of Kennewick.[1]

It is my belief that this court should hold that the provision of RCW 35.24.460 denying jury trial is unconstitutional and invalid as applied to those accused of driving while under the influence of intoxicants and/or reckless driving.

It should be mentioned that a defendant's right to jury trial is not denied by the legislature's provision for a number less than *twelve* in courts not of record in view of our

---

[1]It should be recognized forthrightly, and perhaps emphasized, that the decision I would prefer herein, namely, that a person accused of drunk driving or reckless driving is entitled to a jury trial in the courts of limited jurisdiction, raises some perplexing problems. These problems are precipitated by existing provisions of law respecting the interrelationships of the courts of limited jurisdiction and the superior courts, involving appeals de novo to the superior courts and the non-record status of the courts of limited jurisdiction. In particular, present provisions and procedure entitle a criminal defendant to a de novo trial before a jury—if he elects to appeal to the superior court. Obviously, the resulting duplication of procedure; *i.e.*, two jury trials, in terms of the public interest, would be unnecessarily expensive and time consuming, and, furthermore, would exceed the constitutional standards or requirements with respect to an accused's right to trial by jury. Perhaps there are others, but two possible solutions come to mind. Either must be implemented by legislation and/or constitutional amendment and the promulgation of court rules of procedure:

(1) If a person accused of drunk driving and/or reckless driving demands a jury trial in the court of primary or limited jurisdiction, it could be provided that the justice, municipal, or police court involved loses jurisdiction, and the case is transferred forthwith to the superior court for initial and all other trial purposes.

(2) Or, alternatively, if the accused files a timely demand for jury in the court of limited jurisdiction, it could be provided that that court becomes one of record for the particular case and purpose, with appropriate appellate jurisdiction provided in the superior court; or, perhaps alternatively, a direct appeal to the Supreme Court.

In any event, it seems to me that the majority's disposition of this matter and the questions raised in the dissent merit the prompt attention and study, and appropriate recommendation and/or action, by the Judicial Council, the Legislature, and the Supreme Court—the latter body acting in its administrative or supervisory capacity respecting the courts and the administration of justice in the state of Washington.

constitutional provision to that effect. (See Const. art. 1, § 21, *supra*.)

In my judgment the Superior Court for Benton County properly exercised its discretion in issuing a writ of prohibition to the police court of Kennewick to guarantee the defendant a jury trial. For the reasons indicated, I dissent.

HUNTER, J., concurs with FINLEY, J.