## Kentucky Utilities Co. v. Carlisle Ice Co.

June 16, 1939.

Rehearing Denied Oct. 6, 1939.

L. L. Hindman, Judge.

Gordon, Laurent, Ogden & Galphin and M. C. Anderson for appellant.

Joe E. Warren and F. B. Martin for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellant, among other activities engaged in the manufacture and sale of ice, operating one of its plants in Clinton, Hickman County. It sells its products to wholesale dealers and peddlers, who in turn sell at retail in the town, neighboring towns and adjacent territory. Appellee operated a plant in Bardwell, Carlisle County, and since 1927 had been selling its output in Bardwell; Wickliffe, in Ballard County, and neighboring towns where it had established a trade.

It appears from the record that the usual customary neighborhood price for ice, at wholesale, delivered at the plant, was $4 per ton. In lesser quantities, 50c per cwt. when delivered. One Cosby was selling ice in Bardwell and vicinity prior to and in 1935 and 1936. He was a retailer and peddler. In 1933 the mayor of the town complained that the price of ice was too high. Cosby was paying as he says, sixty and seventy cents per cwt. Some arrangement was made whereby Cosby was enabled to sell at forty and fifty cents per cwt.

Appellee was a competitor, selling in Bardwell and vicinity; in some neighboring villages in the same and adjoining counties. Cosby, prior to 1936, did not buy ice from either appellant or appellee. The mayor loaned him an old hearse, which he rigged up as a truck, and he hauled his wares from a Paducah plant. In March 1936 Cosby entered into a written contract with appellant whereby it was to sell him ice during the year 1936, at the plant for the sum of $2.50 per ton. The only conditions in the contract were that he should sell in cer-

tain territory, and was to purchase in sufficient quantities to supply his customers.

In the latter part of 1935, and the early part of 1936, Cosby sold his ice at 40c per cwt. which appears to have been the price maintained by appellee. Early in the 1936 season Cosby learned that Hayden, who was dealing in appellee's product, had reduced his price to 30c per cwt. Cosby approached Hayden, who told him he was selling "third grade" ice at 20c. Cosby then reduced his price to 30c per cwt. and this price was maintained until the contract with appellant expired in December 1936.

As a result appellee claims that he lost many of its former customers in the territory theretofore served by it and Cosby; that in 1936 it suffered a loss in profits, all due to the activities of Cosby and the appellant. In July, 1936, before the season closed, appellee filed a petition (later transferred to the equity docket) in which it plead substantially the facts above set out, and others. The petition in form and substance was sufficient to entitle it to the relief sought, damages in treble of $3,000, the amount of alleged actual monetary loss, and an injunction against appellant. It was alleged that the acts of appellant were performed for the purpose of driving appellee out of business.

Appellee denied the allegations of the petition and asserted that its sale to Cosby was in good faith, and in order to meet competition from another point; that it was in no wise responsible for Cosby's retail sales. It plead that its sale to Cosby in March, 1936, was by written contract entered into prior to the effective date of Chapter 109, Acts of the General Assembly, regular 1936 session. (Now Section 4748h-1 et seq., 1936 Kentucky Statutes.) That the law was enacted in February, 1936, and did not become operative until May 16, 1936, and it is plead and argued, that to apply the provisions of the Act to this sale would be in violation of both federal and state constitutions, which prohibit the passing of any law interfering with the freedom of contracts. U. S. C. A. Constitution, Article 1, Section 10; Constitution of Kentucky, Section 19. An amended answer was filed, but it in no sense made affirmative defensive plea.

A reply denied the affirmative allegations of the answer and plead that if the court should hold that the arrangement between appellant and Cosby constituted him

an independent dealer, then such sales at $2.50 per ton was below production cost during the year 1936, and likewise below the price at which appellant sold ice to other independent dealers; that these acts in violation of law, contributed to bring about the injuries. The issues were completed by appellant's rejoinder. Proof was taken and upon submission the court adjudged substantially as follows:

That the Act of 1936, Chapter 129-A, Kentucky Statutes, is a valid legislative enactment, and not violative of any provision of the state or federal constitution. The court found that previous to, and at the time of the passage of the Act, appellee was engaged in distributing ice in Bardwell, Wickliffe and adjacent territory, and that defendant was not then so engaged; the established and customary prices for ice were 50c per cwt., delivered, and 40c per cwt. at platform.

Appellant was engaged in the manufacture and sale of ice at Clinton, where the established prices were $4 per ton to dealers and peddlers at platform and 50c delivered at retail. The court then says: "It is therefore found and adjudged that by selling ice" during the season of 1936 "to H. E. Cosby at $2.50 per ton, to be sold and delivered in the towns * * * and permitting the resale by Cosby at prices below those theretofore established, appellant has violated the provisions of said Act, and that as a direct and proximate result of such violation the plaintiff has sustained actual damages amounting to $688, and is entitled to recover of defendant under the provisions of said act the sum of $2,064.00" which was adjudged.

The court also, "Perpetually enjoined appellant from selling or delivering, or permitting to be sold or delivered in (the towns named) ice manufactured or sold by it at a price below the reasonable cost of production and a legitimate profit at the dealers place of business, and that delivered to customers by retail—and is further enjoined from unfair and discriminatory practices by which fair and honest competition is destroyed or prevented."

From the judgment defendant has appealed and appellee is cross-appealing on the ground of inadequacy of damages and because the injunction is not sufficiently restrictive.

Turning now to the Act, we find that it prohibits the

sale or furnishing of any commodity at a lower rate in the same, or in one territory than in another. In a separate section the sale or distribution of commodities at less than cost of production or replacement is prohibited. As indicated by the chancellor, a violation of the terms of the Act visits upon the offender treble the amount of actual damage suffered. Injunctive relief is also provided. The Act provides also that the offender, in addition to the damages in treble, and an order restraining, may upon conviction be fined or imprisoned, or both. Upon a third conviction of violating any of the denounced acts, offender may, under quo warranto proceedings by the Attorney General, be barred from engaging in business forever, or for a lesser period, in the discretion of the court. The Act is not "sans teeth."

There is one provision of the Act to which the court did not advert in his opinion or judgment. The statute clearly makes the offender responsible in damages, and subject to injunction only if the acts denounced be committed "with the intent to destroy the competition of any regular established dealer in such commodity." Kentucky Statutes, Section 4748h-1. The court did not find, or if he did it was not so stated, that appellant's acts were committed for the purpose above mentioned. The intent, as we read the statute, must exist in a case of cutting prices, as well as in selling below cost of production.

Another provision is to the effect that "this Act shall not be construed to prohibit the meeting in good faith of a competitive rate." When the chancellor apparently enjoined appellant from selling in the territory named "at a price below the reasonable cost of production and a legitimate profit at the dealer's place of business," he did not express the opinion that appellant (or Cosby) had sold ice at less than production cost, plus reasonable profit, or if so it was for the ulterior purpose of destroying competition.

The writ of injunction is recognized by all courts as being one of extraordinary remedy. It cannot, nor should it be employed except in cases of urgent necessity, and the right to the relief and the necessity must be clearly shown before relief under such writ is granted.

The Act in question is apparently copied word for word from a California Act. The validity of the Cali-

fornia law has been upheld by the Supreme Court of that State; Wholesale Tobacco Dealers Bureau of Southern California v. National Candy & Tobacco Company, 11 Cal. (2) 634, 82 P. (2d) 3, 118 A. L. R. 486 and cases cited. In these cases it was made manifest that the gist of the injurious acts was the intent to break down or destroy competition. In the Balzer case the court, after pointing out that the injunction was sought on several alleged grounds, said [11 Cal. (2d) 663, 82 P. (2d) 20]:

"Demurrers to each count were overruled. The defendant answered admitting the offers and sales at less than his invoice or replacement cost, but he denied that these acts were performed with the intent to injure competitors or destroying competition, alleging, in this connection, that he offered for sale and sold the goods for less than cost for the sole purposes of meeting the competition of other merchants and of advertising and stimulating his own business.

"Upon a trial of the cause, upon admittedly competent evidence, the trial court found that although defendant admittedly sold certain articles below cost these acts were not performed for the purposes of injuring competitors and destroying competition.

"This last mentioned finding, based as it is upon substantial competent evidence makes it unnecessary to pass upon the constitutionality of the Unfair Practices Act as applied to the facts of this case.

"It was held in the Wholesale Tobacco Dealers Bureau v. National Candy & Tobacco Company Case, supra, that under Section 3 of the act sales below cost are only prohibited when engaged in with the intent to injure competitors and to lessen competition. Under this ruling, obviously, the first and third causes of action fail to state a cause of action."

A case involving a similar act was before the Tennessee Supreme Court recently, Rust v. Griggs, 172 Tenn. 565, 113 S. W. (2d) 733. The exact question was not discussed in that case, because the Act provided that sales made in a manner and under certain circumstances prohibited should be prima facie evidence of the fact that a sale had been made in violation of pro-

vision of the Act. The Act here in question does not contain the "presumption of guilt" clause, hence the court could not presume that the acts alleged to have been done, were so done for destructive purposes. Even had the Act contained such provision, it is under our rules of procedure only such presumptive proof as may be rebutted by competent evidence.

Intent is easily asserted, but is difficult to prove or disprove, but the burden here was not cast on appellant to disprove. It is true that from all the facts the court, or jury, has a right to indulge the belief that proven facts created a presumption of intent. However, in this case, as we read the evidence, the appellant made it clear that such of its acts as were charged to be reprehensible, were not done for destructive purposes but in good faith to meet actual or anticipated competition. The fact that when Cosby's contract ended appellant refused to renew it or to sell him ice at less than $4 per ton, was evidence of its good faith and intention not to violate a statute. Compare the Tobacco Company case, 11 Cal. (2d) 634, 82 P. (2d) 3, at page 7, 118 A. L. R. 486, where it was admitted that sales were made in violation of the Act for the purpose of driving out competition.

Section 4748h-5, Kentucky Statutes, 1936, lends weight to our view of the meaning of the Act. It provides that "in any injunction proceeding or in the prosecution of any person as officer, director or agent, it shall be sufficient to allege and prove the unlawful intent of the person, firm or corporation for whom or which he acts." In other words, if the injunction is sought against an agent or officer, in order to enjoin or convict such agent or officer, it is sufficient to prove the intent of the principal.

Thus it will be seen that intent of the principal is the essential element. Without discussion at length, whether or not this is sound in law, we say that it is not involved here, since appellee did not proceed against Cosby, alleged agent of appellee, because as is explained, Cosby was not in a position to respond in damages. This fact, if true, would not prevent injunction. We note that an exact counterpart of this provision of our statute was condemned in the case of Great Atlantic & Pacific Tea Co. v. Ervin, D. C., 23 F. Supp. 70.

Appellee insists that the contract with Cosby was

but a subterfuge to defeat the intent and purpose of the law. This is an inference only, and we rebutted by competent testimony. Strangely the court found that the "sale" of ice to Cosby at the reduced rate was a violation of the act. Also that the "permitting" of Cosby to cut prices in his territory was another violation. Thus we find the court condemning a "sale" and at the same time condemning Cosby's acts because permitted by appellant.

As we view the contract we are compelled to conclude that it was an outright contract of sale, and not one creating an agency. In this state of case the evil in Cosby's acts cannot be attributed to appellant. It is true that the sale to Cosby was made in March 1936, after the Act was passed in February of the same year, but prior to the effective date of the Act, May 16, 1936.

The contract, unless it be subject to the criticism suggested by appellee, is, as we observe it, a legal one. Such proof as was introduced on the subject shows that there was no intention to avoid or circumvent the provisions of the Act. It shows that the agent making the contract did not know of the passage of the Act.

It is admitted by appellant that it sold ice to Cosby during the 1936 season at $2.50 per ton at its plant. Cosby admits that he sold at 30c per cwt. in his (and appellee's) territory. Cosby did this to meet a cut in price by appellee. This is not denied; Hayden its dealer, was not introduced. As to the sale by appellant to Cosby at a price admitted to be lower than that charged other dealers and peddlers, but not at less than cost of producing, as the proof shows, a fair and reasonable explanation is given by appellant and corroborated by others.

After the Mayor of Bardwell had warned Cosby that ice should be sold cheaper, the arrangement hereinbefore mentioned was made. Early in 1936 a plant at Paducah had installed machinery which permitted it to increase its daily output. It was looking for an outlet and made it known to Cosby that it would sell him ice at $2.50 per ton at the plant. Harbesty, the distributor for appellant, heard of this proposal and approached Cosby to sell him ice. He first made him a proposition to sell at $4 per ton on a downward sliding scale. Cosby was attracted by the Paducah proposal but held out until Harbesty agreed to sell on the $2.50 per ton contract.

This proof is borne out by several witnesses, and there is no convincing proof to the contrary. We need not again refer to Cosby's sales by retail, since we have concluded that appellant was not responsible for his acts.

The case may be, and is determined on the principle of law as applied to the facts in respect of the sale to Cosby in the manner detailed. If the contract was otherwise valid and it was, then the appellant had the right to make it at the time it was made, and the provisions of the Act, which were to and did take effect prospectively and not retroactively, could not reach and condemn this sale.

As we have pointed out, the statute in question is a severe and harsh one. The universal rule is that such statutes should not be given retroactive effect, unless the intent that it shall so operate is made plain by the statute itself. No statute carrying penalties and prescribing severe rules for the conduct of the citizen, is ever extended by implication. The statute under consideration is not a remedial or curative one, but one passed under the police power of the commonwealth to meet what the legislature no doubt thought was a practice inimical to the general welfare of the public. Neither necessity for its passage, nor its passage, sweep aside the provisions of the state and federal constitutions, which protect the right of citizens to legitimately contract.

"Any law which changes the intention and legal effect of the original parties, giving to one greater or the other a less interest or benefit in the contract, impairs its obligation. The extent of the change is immaterial. Any deviation from its terms * * * imposing conditions not included in the contract, or dispensing with the performance of those that are included, however small and unimportant they may appear to be in their effect, impairs the obligation of a contract. * * * The Legislature may regulate the remedy and the methods of procedure under a past as well as a future contract, but it cannot impose new restrictions upon the enforcement of a past contract, so as materially to lessen its value and benefit to either party." O'Connor v. Hartford Accident & Indemnity Company, 97 Conn. 8, 9, 115 A. 484, 486.

"A legislative act will not be permitted, even if

an attempt to do so is disclosed, to operate retrospectively where it will have the effect to invalidate or impair the obligation of contracts or interfere with vested rights." Travelers' Insurance Company v. Ohler, 119 Neb. 121, 227 N. W. 449, 450; Cooley Const. Lim., 8th Ed., 771; R. C. L. Vol. 6, p. 362; Dunlap v. Littell, 200 Ky. 595, 255 S. W. 280.

We need not discuss other points urged, but we are much impressed with the contention of appellant that appellee failed in proof to show sufficiently that it had suffered any actual damage or loss in 1936. The proof offered was of a very unsatisfactory nature.

In reaching our conclusion we have not brought under consideration the pleaded challenge of appellant to the Act as a whole. Its efforts toward endeavoring to show unconstitutionality were chiefly, if not wholly, directed toward showing that the Act, if applied to the sale by appellant, was contrary to the provisions of the Constitutions pointed out. We agree with its contention, and this conclusion obviates the necessity of looking to the validity of the Act in its entirety, a matter upon which we express no opinion.

For the reason stated, supra, the judgment is affirmed on the cross-appeal and reversed on the appeal, with directions to set aside the same and enter one dismissing appellee's petition.