**JEFFERSON ICE AND FUEL COMPANY,**
Appellant,

v.

**GROCERS ICE AND COLD STORAGE
COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 30, 1955.

Rehearing Denied Feb. 10, 1956.

Peter, Heyburn & Marshall, Wallace & Hopson, Louisville, for appellant.

Tilford, Wetherby, Dobbins & Boone, Louisville, for appellee.

WADDILL, Commissioner.

The appellant, Jefferson Ice and Fuel Company, filed this action pursuant to

KRS 365.070, seeking an injunction and treble damages against appellees, Grocers Ice and Cold Storage Company, its officers and directors, for violation of KRS 365.050, which provides as follows:

"Unfair Trade Practices. The secret payment or allowance of rebates, refunds, commissions or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor, and where such payment or allowance tends to destroy competition, is an unfair trade practice, and no person shall resort to such trade practice."

KRS 365.070 provides:

"(1) Any person may maintain an action to enjoin a continuance of any act in violation of any of the provisions of KRS 365.020 to 365.050, and if injured thereby for the recovery of damages. If, in such action, the court finds that the defendant is violating or has violated any of the provisions of KRS 365.020 to 365.050, it shall enjoin the defendant from a continuance thereof. It shall not be necessary that actual damages to the plaintiff be alleged or proved. In addition to such injunctive relief, the plaintiff in the action shall be entitled to recover from the defendant three times the amount of any actual damages sustained. * * *.

"(2) Any person who, as agent of any person or as director, officer or agent of any corporation, assists or aids in a violation of any of the provisions of KRS 365.-020 to 365.050 by the person or corporation for which he is agent, director or officer, shall be responsible therefor equally with such person or corporation, and in any proceeding brought against him under subsection (1) of this section it shall be sufficient to allege and prove the unlawful intent of the person or corporation for whom he acts.

"(3) The remedies prescribed by this section are cumulative."

Both of these companies are in the business of manufacturing ice. Approximately 90 per cent of the ice manufactured is sold to ice dealers, commonly called peddlers, who sell to the consumer.

Appellant alleged that appellees were guilty of making secret payments and allowances in the form of money or other articles of value to the ice peddlers for the unlawful purpose and with the unlawful intent of inducing such ice peddlers to buy ice from appellees, to the injury of appellant.

The circuit court permanently enjoined the appellees from secretly paying, refunding or rebating to any person any part of the purchase price of the ice in violation of the provisions of KRS 365.050. No damages were allowed.

The appellant contends that although the court correctly found appellees guilty of violating KRS 365.050, it erred in not finding that appellant had suffered actual damages of $17,948.34, which would entitle it to treble damages of $53,845.02, as provided by KRS 365.070.

Appellees cross-appealed from so much of the judgment as awarded appellant a permanent injunction. They contend that KRS 365.050 is not applicable to the acts proven against them because: "(1) None of the acts complained of by the appellant were secret; (2) none of them were to the injury of a competitor within the meaning or intendment of KRS 365.050; and, (3) none of them were such as tends to destroy competition." In response to appellant's claim for damages appellees urge that appellant failed to prove with the certainty required by law, the amount of damages which it allegedly sustained as the result of the appellees' unlawful acts, and also, that KRS 365.070, allowing an award of treble damages to the party aggrieved, is unconstitutional.

The first question to be determined is whether or not the proof was sufficient to show that appellees were guilty of violating the provisions of KRS 365.050.

From the evidence it appears appellant and appellees manufacture and sell ice by the 300 pound block from their platform to peddlers. These peddlers have certain routes, which are not clearly defined, in the City of Louisville, and distribute the ice to the consumer. A majority of the peddlers have trucks for transporting the ice, but some of them deliver their ice by push carts. The peddlers pay for the ice at the current wholesale rate of 85 cents per block, and evidently all of the companies have the same rate. This rate has varied through the years. The testimony is not clear as to whether or not there has been a general custom among ice manufacturers of giving a quantity discount to peddlers. Some companies have—others have not. However, it was shown that some ice companies, which in the past had been giving discounts, were required by the O.P.A., formerly an agency of the Federal Government, to continue such practices during part of the year of 1946.

Appellant has sought to show that it lost several peddlers as customers who are now doing business with appellees. Appellant claims that these peddlers ceased purchasing ice from it because the appellees gave them a secret rebate on the purchase price of each block of ice.

John Kuchenbrod, a peddler, testified that he had formerly bought his ice from the appellant. He stated that he quit doing business with appellant because he thought that he could get better service from appellees. He said that during the hot weather there were so many pushcart peddlers at the appellant's platform that he would have to wait for his ice for unusually long periods. He stated that at the time he ceased purchasing ice from the appellant he was receiving no refund. He stated further that he received a refund of 15 cents per block on ice purchased from the appellees, which he began receiving at the end of his first month, before it was known just how much ice he would purchase.

Kelly Ray testified that he had formerly done business with appellant. He said that he was induced to discontinue buying ice from the appellant and to purchase his ice from appellees. Ray admits that he has received a 15 cents refund ever since he has been doing business with the appellees.

John Drury testified that he had formerly done business with appellant, but that he quit buying ice there because he could not get enough ice from it in the summer. He testified that although it was closer for him to buy ice from appellant, he could save time by dealing with appellees because there was no lengthy waiting period. He said that he received a discount from appellees, but that he did not leave appellant for this reason. He claims he knew nothing about the discount when he first began doing business with appellees.

F. S. Anderson testified that he formerly had been doing business with the appellant and that he had never received any refunds or rebates from it. He stated that he had stopped buying ice from the appellant because of the refund he would get from appellees, and that a representative of the appellees had informed him that he would get a refund on ice bought there.

Appellees admit that a refund was given to certain peddlers who bought ice from them, but they urge that these refunds were not rebates, but quantity discounts and were therefore lawful. Mrs. Celia Camentz is the secretary and treasurer of the appellees' corporation and in charge of its records. She testified that the appellees' general business procedure was to charge each peddler 85 cents per block for ice sold at the company's platform. She stated that the company records the amount of ice the peddler purchases, and if he purchases 1500 blocks per year, he will get a refund of 15 cents per block. However, she admitted that peddler Anderson got a refund at the end of his very first month with the company, which was long before it was certain that he would buy 1500 blocks. She maintained that this unusual procedure was used because the company could tell in about a week's time whether or not a customer would be buying 1500 blocks of ice per year. Mrs. Camentz conceded that something might occur which would make

it impossible for the peddler to purchase that amount of ice during the calendar year.

It was also brought out in the testimony of Mrs. Camentz that several peddlers received 20 cents refund per block of ice instead of 15 cents. She attempted to explain this practice by stating that the peddlers who received the 20 cents had been with the company for a longer period of time than those who received a lesser discount. She said the 15 cents discount was established in the year of 1941, and that the older peddlers had received 20 cents before 1941 and had continued to receive such a discount thereafter. She also claimed it was the policy of the company to give a 10 cents discount per block to peddlers who purchased from 1000 to 1500 blocks of ice per year.

From the evidence it is apparent that the refund policy of the appellees was loosely handled. The basis for computing the amount of refund was not uniform among all of the peddlers doing business with appellees. For example, Herman Foster testified that he had bought ice from appellees for about four or five years. He stated that he always paid 85 cents per block for the ice and never received any refund. It is significant to note that Mr. Foster said that he bought between 25 and 30 blocks per day in the summer, so he was apparently within the class that Mrs. Camentz testified was entitled to a refund.

We think that the procedure used by appellees in regard to the refunds shows that they were secretly made. Some of the peddlers received a refund, some did not. Of those who received it, some received 15 cents per block of ice if they sold 1500 blocks, some received 20 cents per block, regardless of the amount they sold, and some received 10 cents per block. From the testimony it is evident that the individual peddlers did not know what refund the other peddlers were receiving. The evidence also establishes that the refund, when given, was not a quantity discount, as claimed by Mrs. Camentz, because the discount was received before it was determined what quantity was purchased by the peddler.

Although several of the peddlers gave various reasons for discontinuing business with the appellant, it is evident from a consideration of the entire testimony that they changed their patronage from appellant to the appellees because of the refund which they anticipated receiving from the appellees. We agree with the trial court that this secret practice tended to destroy competition, and injured the appellant, a competitor. We think that the acts of the appellees amounted to a violation of KRS 365.050 and that the trial court properly granted the injunction under KRS 365.070.

Appellees rely upon the case of Kentucky Utilities Co. v. Carlisle Ice Co., 279 Ky. 585, 131 S.W.2d 499, as establishing the proposition that under the statute the intent to destroy competition must be proven. The provision of the statute construed in that case has reference to the prohibition of sales of any commodity at a lower rate in one territory than in another. KRS 365.020. The provision we are concerned with in the case before us concerns the secret payment of rebates found in KRS 365.050. KRS 365.020 requires that the act be done "with the intent to destroy the competition of any regular established dealer" but under KRS 365.050, with which we are concerned, it is enough if the rebate is secretly made to the injury of a competitor and tends to destroy competition. Under that section of the act intention is not required. Therefore for the reason assigned we do not think that the Kentucky Utilities Co. case, which appellees rely upon, is applicable here. However, to put at rest appellees' contention on this point, we think the evidence did establish that it was appellees' intention to destroy competition by giving rebates.

Although the trial court granted appellant a permanent injunction, it refused to allow damages under KRS 365.070. Under this section of the statute, in addition to

the injunctive relief, the aggrieved party is entitled to recover "three times the amount of any actual damages sustained." The question thus presented is whether appellant has proved any actual damage, and if so, the amount of the damages it has sustained.

S. R. Stevens, an accountant for appellant, testified as to the actual damages sustained by appellant through the loss of patronage of four peddlers. It was stipulated by the parties that these four peddlers had formerly been customers of appellant and were now doing business with the appellees. The actual number of tons of ice sold to these four peddlers by the appellees during the years in question was also stipulated. Mr. Stevens determined the damages suffered by appellant upon a cost accounting theory. The annual expenses of ice manufactured and distributed by appellant are placed into two classes by Mr. Stevens. First, all items of expenses which are fixed regardless of the amount of ice produced and sold are called fixed expense. The other classification of expense is that which is variable. This expense increases or decreases in direct proportion to the amount of ice produced or sold. According to the calculations testified to by Mr. Stevens under this theory, the actual damages sustained by appellant amounted to $17,948.34, which, when trebled under the provisions of KRS 365.070, amount to $53,845.02.

Appellees contend there are several fallacies in appellant's computation of damages. In view of the fact there was no award of damages, we are not concerned at this time with the contentions of the parties in this respect.

■ Appellees further contend that an award of treble damages under KRS 365.070 would be a punishment of appellees, automatic under the statute, with no degree of discretion permissible, which might be followed by prosecution under KRS 365.990, and in the event criminal prosecution is instituted against them under this statute it would subject them to double jeopardy in direct contravention of section 13 of our State Constitution. We think the proper time to raise this question would be when appellees are prosecuted under the criminal provisions of this statute. However, we observe that in Chiles v. Drake, 59 Ky. 146, the court considered a similar question and decided it adversely to the contention now being made.

■ We conclude that the appellees were shown to have violated the provisions of KRS 365.050 and were properly enjoined under KRS 365.070. And we also find that the appellant was entitled to damages.

Wherefore, the judgment is affirmed on cross-appeal and is reversed on the direct appeal, with directions to ascertain and award damages.