[No. 36657. En Banc. February 20, 1964.]

MARY E. MARTIN et al., *Appellants*, v. SERGEI ALEINIKOFF et al., *Respondents*.*

*Short & Cressman* and *William L. Hintze*, for appellants.

*Lycette, Diamond & Sylvester* and *Herman Howe*, for respondents.

WEAVER, J.—Plaintiffs, who compete with defendants in the sale and delivery of fuel oil, commenced this action for

*Reported in 389 P. (2d) 422.

$500 damages and for an injunction to prevent defendants from engaging in alleged unfair business practices in violation of the Washington Unfair Practices Act. RCW 19.90.

Plaintiffs' complaint alleges:

"That in connection with certain sales, *and with an intent to destroy competition*, defendants have made and given, and offered to make or give, special and secret rebates, allowances and unearned discounts and have secretly extended to certain purchasers special services and privileges not extended to all purchasers purchasing upon like terms and conditions." (Italics ours.)

We translate this to mean that defendants offered to sell, and did sell, fuel oil to some customers at prices less than they sold to other customers.[1] The complaint *did not* allege that defendants had sold a product ". . . at less than the cost thereof . . ."

Defendants answered, denying the material allegations of the complaint, and pleading that the Unfair Practices Act is unconstitutional and void.

In his opening statement, plaintiffs' counsel said that he "had not planned" to offer proof that defendants had made sales *below cost*, but would stand upon the allegations of the complaint. Whereupon, the trial court granted defense counsel's motion to dismiss, stating:

". . . In my opinion, the only time there is any sense to the fact that it [a sale] might destroy or tend to destroy competition or injure competitors wrongfully, is where it is below cost. For that reason I will grant the motion."

---

[1] In his opening statement to the court, plaintiffs' counsel said:

"The evidence will show that the defendants in this case, in order to attract new customers, offered to sell fuel oil at prices less than those regularly established prices at which they are selling to the great bulk of their customers. These are discounts given in order to get a new customer. They are special discounts, and they are not made known to all the other customers of the defendants.

"Nor is the lower price offered to all of the customers of the defendants. The defendants have offered these lower prices to certain consumers who, at the time the prices were offered, were customers of the plaintiffs, and the plaintiffs have lost certain customers by reason of this practice."

Our basic problem is to interpret the Unfair Practices Act (Laws of 1939, chapter 221; RCW 19.90) and apply it to the factual situation alleged in plaintiffs' complaint, quoted *supra*, as enlarged by counsel's opening statement.

■ This court has said on many occasions that the fundamental object of judicial construction or statutory interpretation is to ascertain, if possible, and to give effect to, the intention of the legislature in enacting a particular statute (*Graffell v. Honeysuckle*, 30 Wn. (2d) 390, 399, 191 P. (2d) 858 (1948)); and in doing so, our first resort is to the context and subject matter of the legislation " . . . because the intention of the lawmaker is to be deduced, if possible, *from what it said.*" (Italics ours.) *Lynch v. Department of Labor & Industries*, 19 Wn. (2d) 802, 806, 145 P. (2d) 265 (1944); *Hatzenbuhler v. Harrison*, 49 Wn. (2d) 691, 697, 306 P. (2d) 745 (1957).

Woven into the fabric of the Unfair Practices Act, and running as a thread throughout, is the thought that the proscribed business conduct must *result in the injury of a competitor or destroy, or tend to destroy, competition.*

For example: § 1 of the act (RCW 19.90.010) defines "loss leader" as " . . . any article . . . sold at less than cost . . . which diverts trade from *or otherwise injures competitors*" (italics ours); Section 2 of the act (RCW 19.90.020) provides: "It shall be unlawful for any person . . . *with the intent to destroy the competition* of any regular established dealer . . . to discriminate between different sections of the same community [subject to certain exceptions]" (italics ours); Section 4 of the act (RCW 19.90.040) provides: "It shall be unlawful for any person engaged in business . . . to . . . give away any article . . . *for the purpose of injuring competitors or destroying competition* . . . ". (Italics ours.)

■ Intent to injure or destroy competition is, in truth, the touchstone, for the Unfair Practices Act provides criminal penalties[2] as well as civil relief.[3]

─────────────

[2]RCW 19.90.100. "Violation of the provisions of this chapter shall constitute a misdemeanor; and any person, whether as principal, agent, officer or director, for himself, or for another person, or for any

In *State v. Sears*, 4 Wn. (2d) 200, 219, 103 P. (2d) 337 (1940), in which it was held that the Unfair Practices Act is constitutional because it is within the ambit of the state's police power, this court quoted with approval from *Wholesale Tobacco Dealers Bureau v. National Candy & Tobacco Co.*, 11 Cal. (2d) 634, 82 P. (2d) 3, (1938), as follows:

" '. . . it is the predatory trade practice of selling below cost with intent to injure competitors which the legislature on reasonable grounds has determined is vicious and unfair that is prohibited. Such determination is clearly within the legislative power. . . .' "

Appellate arguments bring into sharp focus conflicting interpretations of the 151-word sentence found in Laws of 1939, chapter 221, § 4 (RCW 19.90.040). For the purposes of clarity and reference, we separate and number the several portions of the statute as follows:

"It shall be unlawful for any person engaged in business within this state

"[1] to sell any article or product at less than the cost thereof to such vendor,

"[2] or give away any article or product, for the purpose of injuring competitors or destroying competition,

"[3] or to use any article or product as a 'loss leader,'

"[4] or in connection with any sale to make or give, or

---

firm or corporation, or any corporation, who or which shall violate any of the provisions of this chapter shall be guilty of a misdemeanor for each single violation and upon conviction thereof, shall be punished by a fine of not less than one hundred dollars nor more than one thousand dollars, or by imprisonment in the county jail not exceeding six months or by both said fine and imprisonment in the discretion of the court; and any criminal action shall not affect the right of any person to bring a civil action under RCW 19.90.090."

[3]RCW 19.90.090. "Any person may maintain an action to enjoin a continuance of any act or acts in violation of any of the provisions of this chapter and, if injured thereby, for the recovery of damages. If, in such action, the court shall find that the defendant is violating or has violated any of the provisions of this chapter, it shall enjoin the defendant from a continuance thereof. It shall not be necessary that actual damages to the plaintiff be alleged or proved. In addition to such injunctive relief, the plaintiff in said action shall be entitled to recover from the defendant the amount of the actual damages, if any, sustained by him. Commencement, pendency or conclusion of a civil action for injunction and/or damages shall not affect criminal liability."

to offer to make or give, any special or secret rebate, payment, allowance, refund, commission or unearned discount, whether in the form of money or otherwise,

"[5] or to secretly extend to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions,

"[6] or to make or enter into any collateral contract or device of any nature, [a] whereby a sale below cost is effected, to the injury of a competitor, and [b] where the same destroys or tends to destroy competition." RCW 19.90.040.

The statute is a single, complex sentence with six infinitive phrases used as a compound delayed subject. It is complex because the sixth infinitive phrase contains two subordinate adverbial clauses, [a] . . . whereby a sale below cost is effected, to the injury of a competitor, and [b] where the same destroys or tends to destroy competition." The statute is not a model of legislative draftsmanship.

Plaintiffs contend that the adverbial clause—[a] "whereby a sale below cost is effected, to the injury of a competitor" —refers only to the last antecedent—" " . . . to make or enter into any collateral contract or device of any nature." Defendants, on the other hand, contend that the adverbial clause identified as "[a]" *supra*, refers also to infinitive phrases [4] and [5] of the statute so that "any special or secret rebate" or the extension of special services becomes unlawful *only* if they result in a sale below cost "to the injury of a competitor, and where the same destroys or tends to destroy competition." The trial court based its decision on the latter construction.

In *Davis v. Gibbs*, 39 Wn. (2d) 481, 483, 236 P. (2d) 545 (1951), the rule was announced:

"*Where no contrary intention appears in a statute*, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent. [authorities cited]" (Italics ours.) Accord: *Parkhurst v. Everett*, 51 Wn. (2d) 292, 295, 318 P. (2d) 327 (1957); *In re Andy*, 49 Wn. (2d) 449, 451, 302 P. (2d) 963 (1956).

This rule supports plaintiffs' interpretation of the statute unless it can be said that a contrary intention appears in the statute.

Plaintiffs contend they are entitled to relief under § 4 of the act (RCW 19.90.040) as though it reads in its entirety as follows:

"It shall be unlawful for any person engaged in business within this state . . . [4] in connection with any sale to make or give, or to offer to make or give, any special or secret rebate, payment, allowance, refund, commission or unearned discount, whether in the form of money or otherwise, [5] or to secretly extend to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, . . ." Plaintiffs would have us ignore the remainder of the section.

Plaintiffs buttress their argument by directing our attention to the Unfair Practices Acts of nine jurisdictions,[4] wherein the statutes prohibit *both* sales below cost *and* rebates as separate and distinct unfair practices. In each, the prohibition of rebates and discounts is inseparably linked with injury to a competitor or destruction of competition, a link that is absent from our statute unless the infinitive phrase [6] and its two adverbial clauses [a] and [b] also refer to infinitive phrases [4] and [5]. By combining into one section that which in most jurisdictions appears in two, our legislature has placed a restriction upon the scope of the act.[5]

---

[4]Arkansas Statutes 1947 Annotated, 1957 Replacement, Official Edition, Vol. 6A, Title 70, Ch. 3, § 70-307; Deering's California Codes Annotated, Business and Professions, Div. 7, Part 2, Ch. 4, Art. 3, § 17045; Colorado Revised Statutes Annotated, 1953, Vol. 3, Ch. 55, Art. 2, § 55-2-7; Revised Laws of Hawaii 1955, Vol. 2, Title 24, Ch. 205, Part 1, § 205-8; Kentucky Revised Statutes, 1962, § 365.050, 4748h-7; Revised Codes of Montana 1947 Annotated, Replacement 3, Part 2, Title 51, Ch. 1, § 51-108; West Virginia Code of 1961 Annotated, Vol. 2, Ch. 47, § 4678(8c); Wisconsin Statutes, § 133.185, p. 2216; Wyoming Statutes 1957 Annotated, p. 385, Title 40, § 40-28.

[5]Others have apparently reached the same conclusion. House Bill 141, 37th Regular Session of the Legislature (1961), reads in part as follows:

Plaintiffs argue that the decision in *Jefferson Ice & Fuel Co. v. Grocers Ice & Cold Storage Co.*, 286 S.W. (2d) 80, 54 A.L.R. (2d) 1181 (Ky. 1955) is illustrative of their contention that secret rebates and special privileges not extended to all purchasers are unfair trade practices and may be enjoined. The decision is not apposite for the Kentucky statute requires that these practices must result in " . . . the injury of a competitor, and where such payments or allowances tend to destroy competition . . .", requirements not present in our statute under plaintiffs' interpretation of it.

Applicable to plaintiffs' interpretation is the decision in *Nelsen v. Tilley*, 137 Neb. 327, 289 N.W. 388, 126 A.L.R. 729 (1939).

The Nebraska statute, although treating with the issuance and revocation of motor vehicle dealers' licenses (Neb. C.S. Supp., 1937, Ch. 60, Art. 9, § 60-901, *et seq.*) followed generally the format of the unfair practices acts.

Section 60-912, provided in part:

"The administrator . . . shall have power to deny any license or revoke any license . . . when the dealer or salesman has been found guilty of any of the following:
. . .

"(i) Wilfully discriminating . . . in price between different purchasers of a commodity of like grade or quality where the effect of such discrimination may be substantially *to lessen competition or tend to create a monopoly or to injure or destroy the business of a competitor.*

"(j) Wilfully discriminating in favor of one purchaser against another purchaser of a motor vehicle by contracting to furnish or furnishing services or facilities or allowing such discounts or rebates in connection with the sale or offering for sale of such motor vehicle so purchased upon terms not accorded to all purchasers on proportionally equal terms.

---

"It shall be unlawful for any person, engaged in the . . . sale of any article . . ., with the intent to destroy the competition of any regular established dealer . . . to discriminate between different purchasers in this state, by selling . . . such article . . . at a lower price to one such purchaser than to another: Provided [not applicable to the instant case] . . ."

The bill did not become law.

"(k) Wilfully and habitually making excessive trade-in allowances on used motor vehicles *for the purpose of lessening competition or destroying a competitor's business.*" (Italics ours.)

We point out that paragraph (j) of the Nebraska statute is a definitive statement of the generalities of phrases [4] and [5] of RCW 19.90.040, *supra.*

In its discussion of the constitutionality of the three quoted sections of the Nebraska statute, the court said:

"This court is committed to the doctrine that constitutional guaranties 'contemplate that every person legally possesses the right of acquiring the absolute and unqualified title to every species of property recognized by law, with all rights incidental thereto, and, in connection with the right of personal liberty, it includes the right to dispose of such property in such innocent manner as he pleases, and to sell it at such price as he can obtain in fair barter.'

" . . .

"It will be noted therefore that in subdivisions (i) and (k) *the prohibited acts are unlawful only where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly or to injure or destroy the business of a competitor. The act itself is not prohibited; it is the act accompanied by an intent to accomplish a result made unlawful by the statute which the legislature attempted to correct.* Injuries sustained as a result of fair competition are not protected against by either the state or federal Constitutions. . . .

"As to subdivision (j), the element of intent is lacking. *The prohibition is against wilful discrimination in favor of one purchaser against another in the respects noted therein, without reference to the intent or motive of the person so doing. It is in effect a price fixing statute. It is violative of the holdings heretofore cited and of the constitutional prohibitions hereinbefore referred to. Certainly, a person may sell his property for any price he cares to sell it for, unless it be accompanied by an intent to accomplish a purpose that is unlawful.* If the statute purports to prohibit every wilful discrimination in price, every agreement to furnish services, every allowance of a discount or rebate, and every sale of a motor vehicle at other than a fixed standard price, it conflicts with constitutional restraints imposed on the legislature with reference to the acquisition, ownership and enjoyment of property, and the guaranty that no person

shall be deprived of life, liberty or property without due process of law. . . . We are therefore obliged to hold that subdivision (j) of section 60-912 of the act is invalid and of no force and effect." (Italics ours.)

■ It is not necessary for us to resolve whether infinitive phrases [4] and [5] of RCW 19.90.040, *supra*, are unconstitutional—a conclusion to which plaintiffs' interpretation of them might lead us—for, if a statute is subject to two interpretations, one rendering it constitutional and the other unconstitutional, the legislature will be presumed to have intended a meaning consistent with the constitutionality of its enactment. *State ex rel. Dawes v. Washington State Highway Comm., ante* p. 34, 385 P. (2d) 376 (1963).

By alleging in their complaint that defendants acted "with intent to destroy competition," plaintiffs seek to avoid the reasoning of *Nelsen v. Tilley, supra.* In doing so, they have reached into the last phrase of § 4 of the act (RCW 19.90-.040) for a portion of their allegation, but argue that they are not bound by all of it; thus they try to escape the adverbial clause— ". . . whereby a sale below cost is effected . . .".

■ The rationale of the Unfair Practices Act, and especially of § 4 as drafted by our legislature, is to prohibit, in general terms, a seller from making or entering

". . . into any collateral contract *or device of any nature,* whereby a sale below cost is effected to the injury of a competitor, and where the same destroys or tends to destroy competition." (Italics ours.)

This generalization (which is phrase [6] of § 4) is sufficiently broad to include the specifics spelled out in the remainder of the section.

We conclude, therefore, that a "contrary intention appears in the statute"; that "whereby a sale below cost is effected to the injury of a competitor" refers not only to the last antecedent, but to each antecedent to which it *may* refer without impairing the meaning of the sentence.

The remainder of plaintiffs' appellate argument is an-

swered in *State v. Sears*, 4 Wn. (2d) 200, 103 P. (2d) 337 (1940).

The judgment is affirmed.

OTT, C. J., DONWORTH, ROSELLINI, and HALE, JJ., concur.

FINLEY, J. (dissenting)—The majority holds that RCW 19.90.040 is not violated by the secret unearned discounts given by the defendant in this case to lure away the customers of a competitor. I consider this result unsound, both because it is contrary to the usual construction of statutory language and, even more importantly, because it flies in the face of clearly announced legislative policy of developing an integrated, consistent body of antitrust and competition-fostering statutory law.

The precise language here in question, a part of RCW 19.90.040, reads as follows:

"It shall be unlawful . . . to offer to make or give, any special or secret rebate, payment, allowance, refund, commission or unearned discount, . . . or to secretly extend to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, or to make or enter into any collateral contract or device of any nature, whereby a *sale below cost* is effected, to the injury of a competitor, and where the same destroys or tends to *destroy competition*." (Italics mine.)

The majority finds that the language conditioning illegality upon the occurrence of a sale below cost not only modifies the last antecedent but also the part of the statute prohibiting secret rebates. The effect of this is of course to make secret rebates illegal *only* when they involve a sale below cost. There results a large area of secret discounts, rebates, extra services, and related cozy business favors or advantages which are made legal in Washington, to the indisputable serious injury to free and open competition.

The precise issue presented by this case is whether the language in RCW 19.90.040 concerning sales below cost does, as the majority claims, refer back and limit the prohibition against price discrimination. The basic inquiry in

the construction of any statute is always said to be directed to the discovery of the legislative intent. Usually this intent, or stated another way, this legislative purpose and policy, must be ascertained from the normal usage of the language of the statute itself. If this seems inadequate it becomes important to look further, seeking to ascertain the policy behind the enactment of the statute and to construe the wording to effectuate the best available indication of the legislative purpose. Where the legislature enunciates an economic policy or theory, this court should not substitute its own views as to a more desirable or wiser economic policy.

The majority cites, but is unable or unwilling to rely upon, the rule of construction that, where no contrary intention appears in a statute, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent. *Davis v. Gibbs* (1951), 39 Wn. (2d) 481, 236 P. (2d) 545. The application of that rule of construction would indicate that the sales-below-cost language does not limit or modify the discrimination prohibition. Instead, a "contrary intention" is found to appear in the statute. This is really a statement that the intent of the legislature controls, but that a better way can be found to ascertain that intent than by reference to the rules of grammar. I agree with this approach but not with the reasoning ultimately adopted by the majority.

The reasoning of the majority seems to me to be an unnecessarily complex and technical way to establish the legislature's intention, *particularly* when the legislature *has stated precisely* what its intent was concerning the entire chapter 19.90. In RCW 19.90.910, the legislature declared its intention as follows:

"*Construction.* The legislature declares that the purpose of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and *discriminatory practices by which fair and honest competition is destroyed* or prevented. This chapter shall be liberally construed that its beneficial purposes may be subserved." (Italics mine.)

That language should be determinative of this case. The legislature clearly states that its purpose in passing the statute was to prohibit "discriminatory practices by which fair and honest competition is destroyed." Whether or not there has been a "sale below cost" seems completely irrelevant, insofar as a discriminatory practice is concerned.

The entire basis of the majority's interpretation of the statute is the premise that the legislature would expressly state that price discriminations were illegal only where they are destructive to competition. This, in effect, required that the legislature add another "destructive to competition" clause, one not "tied" to the "sales below cost" provision, before the majority will accept the literal words which outlaw secret price discriminations; *Jefferson Ice & Fuel Co. v. Grocers Ice & Cold Storage Co.*, 286 S.W. (2d) 80 (Ky. 1955), 54 A.L.R. (2d) 1181. See: Annot., *Construction and effect of State statute forbidding unfair trade practice of competition by discriminatory allowance of rebates, commissions, discounts, or the like,* 54 A.L.R. (2d) 1187 (1957). However, this overlooks the high degree of probability that the legislature could consider all secret price discriminations inherently destructive to competition, and thus, could consider any such qualifying phrase superfluous. As stated in the appellants' brief:

"Competition, of course, involves a struggle among the competitors, but it should be an open struggle based upon the skill, effort and efficiency of the competitors. Only thus will the competition result in a benefit to the public at large.

" 'In the competitive contest, constructive effort is the basic and permissible weapon; it is not a struggle of one competitor *against* the other but of all *with* the others for a common prize. The customer is in the role of umpire, and competitors should invite his patronage by affording him the opportunity *to judge freely the quality, price and service each offers, as the product of his own effort and skill without violation of non-competitive legal obligations* . . .' Callman, *Unfair Competition and Trade Marks* 2d Ed., Vol. 1, sec. 8, p. 136. (Emphasis—the author's.) ·

"When a special or secret rebate or discount is given, or a special service or privilege conferred, it must necessarily

be at the expense of the customers not so favored.

"The federal Robinson-Patman Act in sec. 2(a) [15 U.S.C.A. 13 (a)] prohibits the conduct of which appellants here complain:

" 'The most common form of price concession other than those discussed in previous chapters consists in unsystematic price reductions to particular customers. Unlike the concessions previously discussed, discrimination of this kind rests on no avowed principle, follows no avowed pattern, and often involves concessions so heterogeneous that no pattern can be imputed to it by the observer.

" 'Unsystematic concessions that take the form of departures from a systematic discount schedule have been frequent in Robinson-Patman cases.' Edwards, *The Price Discrimination Law*, p. 464 (1959).

"Edwards, in his discussion of the purposes and objectives of the Robinson-Patman Act, quotes the Senate Judiciary Committee at p. 30 as follows:

" ' . . . Discriminations in excess of sound economic differences involve generally an element of loss, whether only of the necessary minimum of profits or of actual costs, that must be recouped from the business of customers not granted them. . . .' "

Even accepting the shaky view that the requirement of an injury to competition could not refer to the secret price discrimination clause without, in effect, "taking the below cost language along with it," the inherent nature of such discriminations makes it idle to require the legislature to include any language so limiting the thrust of the statute.

RCW 19.90.040 is a vital part of the statutory plan in Washington, made to effectuate the antitrust policy of this state and to foster fair and open competition. The policy considerations and economic views that lead the majority to twist and turn the wording of the statute and emasculate this otherwise comprehensive statutory scheme are not convincing to me. Presumably, the interpretation proposed by the majority will surprise the commentators who have thus far considered this section of the statute. In Dewell and Gittinger: *The Washington Antitrust Laws,* 36 Wash. L. Rev. 239, p. 276, the authors state:

"Extension of Special Services or Privileges. To supplement the price discrimination and below cost sales pro-

visions of the act, the statute also prohibits the granting of any 'special or secret rebate, payment, allowance . . . in the form of money or otherwise' or the extending to certain purchasers of special services or privileges not extended to all purchasers on like terms.

"While the statutory wording differs substantially from that of the Robinson-Patman Act, it appears that both statutes are designed to prohibit similar types of business conduct. The purpose of the federal prohibitions is to circumscribe all forms of indirect discriminatory pricing. This appears consistent with the stated purposes of the Unfair Practices Act.

"Unlike the price discrimination provisions of the Robinson-Patman Act, the prohibition against discriminatory services and facilities is not predicated upon a showing of adverse competitive effects or proof of an unlawful intent. Nevertheless, it seems clear that competitive injury is a requirement under this section of the Unfair Practices Act."

Again in 1 CCH *Trade Regulation Reporter,* Par. 3568, p. 5315, the editor states:

"The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor, and where such payment or allowance tends to destroy competition, is an unfair trade practice by express statutory provision in the following states: Arkansas, California, Colorado, Kentucky, *Washington,* Wisconsin, Wyoming." (Italics mine.)

To the creation by the majority of the indicated loophole in the statutory scheme, heretofore thought reasonably consistent, workable and well-settled, respecting fair, free and open competition, I cannot agree.

Now pausing to summarize and consolidate—and for reconnaissance before attempting to advance a bit further, argumentatively: Several reasons generate this dissent. Perhaps it is simply a matter of judgment, but, even so, I am convinced that in the proposed majority opinion (1) the interpretation of the statute is strained and inappropriate, (2) the implicit or explicit economic analysis of the implications of the problem is patently fallacious, and (3) the

implicit economic philosophy or viewpoint is unsound and undesirable as a matter of public policy.

Little further need be said concerning the problem of statutory interpretation than that the majority opinion clearly reveals the difficulty which was encountered in reaching the indicated result.

As to the economic analysis, philosophy or views which would impel such a strict, technical and unrealistic interpretation, identifying as these do so closely with *laissez faire* economic thinking, I would have thought and hoped that the acceptability of such an approach went out with the hoop skirt, or at least with the somewhat subsequent demise of that fabled "Surrey with the Fringe on the Top."

The outlawing of sales below cost is only one, perhaps the first, toddling step in the direction of reasonable governmental action to control the ethics of the market place in an effort not to limit but to advance and insure *free, open* and *fair* competition. A long list of equally undesirable or "unfair" business practices could be compiled without inclusion of or tying them to the concurrence of a sale at a price below cost. Unquestionably, the sale-below-cost device presents a handy picture or dramatic touchstone of illegality, as the unfairness and motive of it are easy to visualize and grasp, but it can be highly deceptive—or even worse, it can be irrelevant in a larger perspective respecting open, free and fair competition in merchandising.

The basis of the trial court's decision, apparently accepted by the majority, is that there can be no injury to competition unless there is a sale below cost. This ignores several factors: First, that the injury—the stealing of the customer—can be and probably is accomplished solely by the creation of a secret price differential available only to selected customers, which, to be effective as an unfair trade practice and an evil competitively, need not be a sale below cost as envisaged by the majority; second, that in markets reasonably competitive at the outset every secret price discrimination, including that in the case at bar, may be *per se* a sale below "cost", as defined by the statute. This latter point, as it involves the very difficult effort of measur-

ing the degree of competition in the industry on a case-by-case basis, is a poor point on which to turn the case argumentatively; but, nevertheless, it serves to illustrate in a more tangible way potential competitive injury inherent in price discriminations. The statute defines *cost* as including not only the price paid the wholesaler for the item but, also, the prorata share of the other costs, the overhead items such as rent and possibly return on investment. The statute obviously then requires that these cost items be fairly distributed among all items sold in calculating whether a sale below cost has been made.

However, the very nature and essence of all price discriminations is a sale to the favored few at a price which, while higher than the "cost of goods sold" item (sometimes called the "variable" cost), is lower than what would have to be charged if that sale had to bear its fair share of all other overhead costs (fixed costs). When analyzed in this manner, the very touchstone pressed upon this court by the discriminator in the instant case shows the potentially injurious effect of price discriminations.

A final point which I find most convincing in terms of the all-over pattern of the legislative enactments in Washington state is that price discriminations, on an area basis, are illegal under RCW 19.90.020, which, in the words of the statute, prohibits discrimination:

" . . . between different sections of the same community, city, town or village in this state, by selling or furnishing such article or product at a lower price in one such section than in another . . ."

If, for example, it is unfair competition and legally wrong to discriminate between buyers on the east side and buyers on the west side of the state, or perhaps the street, then why allow discrimination between two buyers, both on the east side of the state or same side of the street? Such a distinction it seems to me is devoid of significance. It was not made by the legislature, as, in my opinion, legislators rationally may have thought that RCW 19.90.040 covered such cases. It is the majority opinion, not the legislature, which intro-

duces and foments this fallacy. On the basis of the foregoing discussion, I dissent.

HILL, J. (dissenting)—I concur in the result of the dissent; *i.e.* the plaintiffs' action should not have been dismissed.

HUNTER, J. concurs in the result of the dissent.

HAMILTON, J. (concurring in the dissent)—I concur in the result of the dissent. Without entering the grammatical and philosophical arenas so competently cultivated by the majority and dissenting opinions, it is my view that, when read in the context of RCW 19.90 as a whole, RCW 19.90.040 plausibly and naturally breaks down and should be read as follows:

"It shall be unlawful for any person engaged in business within this state

"[1] to sell any article or product at less than the cost thereof to such vendor,

"[2] *or* give away any article or product, for the purpose of injuring competitors or destroying competition,

"[3] *or* to use any article or product as a 'loss leader,'

"[4] *or* in connection with any sale to make or give, or to offer to make or give, any special or secret rebate, payment, allowance, refund, commission or unearned discount, whether in the form of money or otherwise,

"[5] *or* to secretly extend to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions,

"[6] *or* to make or enter into any collateral contract or device of any nature, whereby a sale below cost is effected, to the injury of a competitor,

"*and* where the same destroys or tends to destroy competition." (Italics mine.)

Injury to or destruction of competition, as the majority point out, is the touchstone of the Unfair Practices Act. Thus, only the final and conjunctive adverbial clause logically, and in keeping with the primary purpose of the act, modifies or qualifies the preceding disjunctive infinitive clauses. To hold, as the majority does, that each of the antecedent infinitive clauses (1 through 6), to which the adverbial clause "whereby a sale below cost is effected" may be intelligibly attached, is modified by such clause, is

to render each such infinitive clause practically superfluous. The legislature could have accomplished the end result effected by the majority opinion by simply stopping at the end of clause 2.